ATLANTIC COAST LINE RAILROAD COMPANY v. CITY OF LAKELAND, a Municipal Corporation in Polk County.

177 So. 206.

Opinion Filed November 16, 1937.

*W. E. Kay* and *T. Paine Kelly,* for Appellant.

*Carver & Langston,* for Appellee.

WHITFIELD, J.—The City of Lakeland instituted proceedings in the Circuit Court for Polk County, Florida, under Secs. 5106 (3296), *et seq.,* C. G. L., seeking to have judicially validated before being issued under Chapter 15772, Acts of 1931, Secs. 2383, *et seq.,* Perm. Supp. to C. G. L. 1927, refunding bonds and "delinquent tax notes" covering outstanding bonded and other indebtedness of the City, the State of Florida being made the party defendant under the statute with notice to taxpayers and citizens of the City and leave to them to intervene. The issue of the refunding bonds and "delinquent tax notes" has not been approved by the electorate of the City. Amended Sec. 6, Art. IX, Constitution. From the final decree of validation, the intervener, a taxpayer, alone appealed. Section 5108 (3298) C. G. L.

In substance the petition filed by the City alleges:

"That Petitioner is governed by * * * Chapter No. 10754, Laws of Florida, Acts of 1925, and other Acts amendatory and supplementary thereto. * * *

"That on the 29th day of June, A. D. 1937, the City Commission of the City of Lakeland, Florida, duly passed a Resolution authorizing, pursuant to Chapter No. 15772, Laws of Florida, Acts of 1931, the refunding of the City's outstanding general indebtedness by the issuance of Refunding Bonds and Delinquent Tax Notes. That in and by the terms of said Resolution it is proposed that there shall be issued by Petitioner 1936 General Refunding Bonds in the principal amount of Six Million Five Hundred Fifty-seven Thousand ($6,557,000.00) Dollars and Delinquent Tax Notes in an amount equal to the unpaid interest accrued to July 1, 1936, on the outstanding bonds to be refunded thereunder. All of which will more fully appear in a certified copy of said Resolution hereto attached, marked Exhibit 'A' and made a part hereof the same as if entered herein in full.

"Said Refunding Bonds and Delinquent Tax Notes are authorized to be issued for the purpose of refunding a like amount of valid subsisting bonded debt of the said City of Lakeland, Florida, outstanding January 1, 1933, all of which bonded debt was therefore duly and legally created by said City of Lakeland, Florida.

The Resolution, Exhibit "A," contains the following:

"Section 1. It is hereby found and determined that the following described indebtedness constitutes a valid outstanding funded indebtedness of the City of Lakeland, Florida, incurred prior to January 1, 1933, for various municipal purposes and that for the payment thereof all property within the present territorial limits of the City of Lakeland, Florida, excepting only such property as was exempted

from taxation by the Constitution of Florida as it existed immediately prior to November 6, 1934, is subject to taxation without limitation of rate or amount:

| Issue Number | Date of Issue | Title of Issue | Interest Rate | Principal Unpaid |
|---|---|---|---|---|
| 1 | 3/ 1/12 | Building Improvement | 5% | $ 9,000.00 |
| 2 | 3/ 1/12 | Sewer | 5% | 61,000.00 |
| 3 | 1/ 1/15 | Fire Improvement | 5% | 20,000.00 |
| 4 | 1/ 1/15 | Hospital | 5% | 14,500.00 |
| 6 | 2/ 1/22 | Refund Floating Debt | 6% | 80,000.00 |
| 7 | 2/ 1/04 | Light and Water Imporvement | 6% | 6,000.00 |
| 8 | 1/ 1/10 | Light and Water Improvement | 5% | 40,000.00 |
| 9 | 1/ 1/15 | Light and Water Improvement | 5% | 7,000.00 |
| 10 | 1/ 1/15 | Light and Water Improvement | 5% | 100,000.00 |
| 15 | 3/ 1/12 | Street Improvement— City's One-third | 5% | 44,000.00 |
| 38 | 9/ 1/23 | Light and Water Improvement | 6% | 262,000.00 |
| 39 | 9/ 1/23 | Library Site | 6% | 25,000.00 |
| 40 | 7/ 1/24 | Street Improvement | 6% | 144,000.00 |
| 41 | 7/ 1/24 | City Hall Site | 5½% | 74,000.00 |
| 42 | 7/ 1/24 | Athletic Field | 5½% | 82,000.00 |
| 43 | 7/ 1/24 | Fire Station—N. S. | 5½% | 19,000.00 |
| 44 | 7/ 1/24 | Abattoir | 5½% | 38,000.00 |
| 45 | 7/ 1/24 | Stockade | 5½% | 13,000.00 |
| 46 | 7/ 1/24 | Jail and Central Fire Station | 5½% | 23,000.00 |
| 47 | 7/ 1/24 | Incinerator | 5½% | 8,000.00 |
| 48 | 7/ 1/24 | Cemetery Improvement | 5½% | 13,000,00 |
| 49 | 7/ 1/24 | Fire Station—S. S. | 5½% | 17,000.00 |
| 50 | 7/ 1/24 | City Hall—Auditorium | 5½% | 224,000.00 |
| 51 | 7/ 1/24 | Park Improvement | 5½% | 12,000.00 |
| 52 | 7/ 1/24 | White Hospital | 5½% | 215,000.00 |
| 53 | 7/ 1/24 | Colored Hospital | 5½% | 23,000.00 |
| 54 | 7/ 1/24 | Library Building | 5½% | 50,000.00 |
| 55 | 7/ 1/24 | Comfort Station—Munn Park | 5½% | 10,000.00 |

| Issue Number | Date of Issue | Title of Issue | Interest Rate | Principal Unpaid |
|---|---|---|---|---|
| 57 | 11/10/24 | Sewer Extension | 5½% | 662,000.00 |
| 58 | 11/10/24 | Street Improvement—City Work | 5½% | 53,000.00 |
| 59 | 1/ 1/25 | Street Improvement | 6% | 20,000.00 |
| 60 | 2/ 2/25 | Street Improvement | 6% | 48,000.00 |
| 61 | 7/ 1/25 | Municipal Improvement—Civic Center | 5¼% | 400,000.00 |
| 63 | 7/ 1/25 | Street Improvement | 6% | 24,000.00 |
| 64 | 7/15/25 | Street Improvement | 6% | 72,000.00 |
| 65 | 12/ 1/25 | Street Improvement | 6% | 182,000.00 |
| 67 | 10/ 1/25 | Street Improvement | 5½% | 55,000.00 |
| 68 | 1/ 1/25 | Street Improvement | 5½% | 122,000.00 |
| 69 | 9/ 1/25 | Fire Alarm Ext. | 5½% | 29,000.00 |
| 70 | 6/ 1/26 | Municipal Improvement—Lakes | 5½% | 49,000.00 |
| 71 | 6/ 1/26 | Building—Stockade | 5½% | 54,000.00 |
| 72 | 6/ 1/26 | Nurses' Home | 5½% | 72,000.00 |
| 73 | 6/ 1/26 | Incinerator | 5½% | 30,000.00 |
| 74 | 6/ 1/26 | Oates Lot—Library Site | 5½% | 24,000.00 |
| 75 | 6/ 1/26 | Street Improvement—City Work | 5½% | 19,000.00 |
| 76 | 6/ 1/26 | Municipal Improvement—Building Ground | 5½% | 28,000.00 |
| 77 | 6/ 1/26 | Municipal Improvement—Lake Mirror | 5½% | 238,000.00 |
| 78 | 6/ 1/26 | Sewers | 5½% | 582,000.00 |
| 79 | 7/ 1/26 | Street Improvement | 5½% | 80,000.00 |
| 80 | 6/ 1/26 | Street Improvement | 5½% | 17,000.00 |
| 81 | 5/ 1/26 | Street Improvement | 5½% | 14,000.00 |
| 82 | 6/ 1/26 | Park Improvement—Jones Grove | 5½% | 41,000.00 |
| 83 | 6/ 1/26 | Fire Fighting Equipment | 5½% | 30,000.00 |
| 84 | 6/ 1/26 | Athletic Field | 5½% | 25,000.00 |
| 85 | 11/ 1/26 | Street Improvement | 6% | 46,000.00 |
| 86 | 11/10/26 | Street Improvement | 6% | 29,000.00 |
| 87 | 1/ 1/27 | Street Improvement | 5½% | 177,000.00 |
| 88 | 5/ 1/27 | Capital | 5½% | 247,000.00 |

| Issue Number | Date of Issue | Title of Issue | Interest Rate | Principal Unpaid |
|---|---|---|---|---|
| 90 | 10/ 1/27 | Whitney | 6% | 26,000.00 |
| 91 | 10/ 1/27 | Street Improvement | 6% | 9,500.00 |
| 92 | 6/ 1/27 | Street Improvement | 5½% | 57,000.00 |
| 93 | 6/ 1/28 | Refunding | 5½% | 251,000.00 |
| 94 | 11/ 1/28 | Refunding | 5½% | 57,000.00 |
| 95 | 11/ 1/28 | Refunding | 5½% | 88,000.00 |
| 96 | 1/ 1/29 | Refunding | 5½% | 32,000.00 |
| 97 | 1/ 1/29 | Refunding | 5½% | 55,000.00 |
| 98 | 5/ 1/29 | Refunding | 5½% | 94,000.00 |
| 99 | 5/ 1/29 | Refunding | 5½% | 182,000.00 |
| 100 | 11/ 1/29 | Refunding | 5½% | 54,000.00 |
| 101 | 11/ 1/29 | Refunding | 5½% | 129,000.00 |
| 102 | 1/ 1/30 | Refunding | 5½% | 90,000.00 |
| 103 | 10/15/30 | Refunding | 5½% | 10,000.00 |
| 104 | 1/ 1/31 | Refunding | 5½% | 47,000.00 |
| 105 | 6/ 1/31 | Refunding | 5½% | 84,000.00 |
| 106 | 9/ 1/31 | Refunding | 6% | 21,000.00 |
| 107 | 10/ 1/31 | Refunding | 5½% | 24,000.00 |
| 108 | 12/ 1/31 | Refunding | 6% | 44,000.00 |
| 109 | 1/ 1/32 | Refunding | 5½% | 1,000.00 |
| 110 | 1/ 1/32 | Refunding | 5½% | 37,000.00 |
| 111 | 2/ 1/32 | Refunding | 6% | 21,000.00 |
| 113 | 5/ 1/32 | Refunding | 5½% | 13,000.00 |
| 114 | 6/ 1/32 | Refunding | 5½% | 15,000.00 |
| 115 | 7/ 1/32 | Refunding | 6% | 7,000.00 |
| 116 | 7/ 1/32 | Refunding | 5½% | 6,000.00 |

"Section 2. Refunding bonds in the principal amount of $6,557,000.00 are hereby authorized to be issued for the purpose of refunding the principal amount of indebtedness and judgments thereon described in Section 1 hereof and any additional judgments that be hereafter recovered

thereon. Notwithstanding the greater liability imposed upon the City by the statutes relating to the payment of judgments, judgments shall be refunded in the same manner and upon the same basis upon which the bonds and interest included therein would be refunded if not reduced to judgment, and for this purpose interest on the principal amount of bonds reduced to judgment shall be computed at the rate prescribed in such bonds and interest upon interest shall be excluded.

"Taxes sufficient to produce the sums required for the payment of principal and interest of said refunding bonds will be levied upon all property within the present territorial limits of the City of Lakeland, Florida, which was not exempted from municipal taxation by the Constitution of the State of Florida as it existed immediately prior to November 6, 1934, and all of such property shall be subject to the specific tax levies hereinafter directed to be made.

"Said Refunding Bonds shall be dated July 1, 1936, and shall mature July 1, 1966, subject to redemption on any interest payment date prior to maturity upon payment of the par value thereof and accrued interest to the date fixed for redemption.

"In the event the City should desire or be required, as hereinafter set forth, to redeem said bonds prior to maturity, the particular bonds to be redeemed shall be determined by lot and shall be redeemed only after notice of redemption, setting forth the numbers of the particular bonds to be redeemed and the date fixed for redemption, shall have been published in a financial newspaper published in the City of New York, N. Y., once a week for four consecutive calendar weeks, the date of the first publication of such notice to be at least sixty days prior to the date fixed for redemption.

"Said refunding bonds shall be numbered consecutively and of denominations of $100.00 or any multiple thereof or as may hereafter be agreed to by the City Clerk and the creditors entitled thereto, and shall contain provisions for their registration as to principal alone and as to both principal and interest. The principal and interest of said bonds shall be payable in lawful money of the United States of America at Manufacturers Trust Company, New York, N. Y.

"Said refunding bonds shall bear interest at the rate of two per centum per annum to July 1, 1937; thereafter at the rate of two and one-half per centum per annum to July 1, 1938, thereafter at the rate of three per centum per annum to July 1, 1941; thereafter at the rate of three and one-half per centum per annum to July 1, 1945; thereafter at the rate of four per centum per annum to July 1, 1948; thereafter at the rate of four and one-half per centum per annum to July 1, 1951; thereafter at the rate of five per centum per annum to July 1, 1966. Interest upon said refunding bonds shall be payable semi-annually and shall be evidenced by interest coupons to be attached thereto. * * *

"Section 4. The Refunding Bonds herein authorized to be issued shall be signed by the Mayor-Commissioner and City Manager, and attested by the City Clerk and the corporate seal of the City of Lakeland, Florida, shall be affixed thereto. The interest coupons thereto attached shall be executed with the facsimile signatures of said Mayor-Commissioner, City Manager, and City Clerk. The text of said bonds shall be in substantially the following form:

"UNITED STATES OF AMERICA
"STATE OF FLORIDA

"1936 GENERAL REFUNDING BOND
"ISSUE OF JULY 1, 1936

"No............................ $............................

"The City of Lakeland, Florida, in Polk County, Florida, is justly indebted and for value received hereby promises to pay to bearer, or if this bond be registered, to the registered owner hereof, on the first day of July, 1966, the principal sum of.................................................................($............................) together with interest thereon from the date hereof at the rate of two per centum per annum to July 1, 1937; thereafter at the rate of two and one-half per centum per annum to July 1, 1938; thereafter at the rate of three per centum per annum to July 1, 1941; thereafter at the rate of three and one-half per centum per annum to July 1, 1945; thereafter at the rate of four per centum per annum to July 1, 1948; thereafter at the rate of four and one-half per centum per annum to July 1, 1951; thereafter at the rate of five per centum per annum to July 1, 1968, said interest being payable semi-annually on the first days of January and July in each year. Both principal and interest hereof are payable in lawful money of the United States of America at Manufacturers Trust Company, in the City of New York, N. Y., upon presentation and surrender of this bond and the interest coupons hereto attached as they severally mature.

"This bond is issued under the authority of and in full compliance with the Constitution and statutes of the State of Florida, including the Charter of the City of Lakeland, Florida, and pursuant to a resolution passed by the City Commission of said City of Lakeland, Florida, for the pur-

pose of refunding valid subsisting funded indebtedness of said City, for the payment of which the City was obligated to levy taxes upon all property within its present territorial limits which was subject to taxation under the Constitution and laws of Florida as they existed immediately prior to November 6th, 1934.

The City of Lakeland, Florida, hereby reserves the right to redeem this bond on any interest payment date upon payment of par and accrued interest, and agrees that it will apply the sinking fund created by the resolution authorizing the issuance of this bond to the redemption of the bonds of this issue at par and accrued interest by lot, whenever such sinking fund amounts to $25,000.00 or more, and is not used for the purchase of bonds of this issue at less than par and accrued interest and not reserved to so acquire such bonds under then published notice, in the manner more particularly prescribed by the resolution authorizing the issuance of this bond. In the event this bond is so called for redemption, notice thereof shall be published in a financial newspaper published in the City of New York, N. Y., once a week for four consecutive calendar weeks, the date of first publication to be at least sixty days prior to the date fixed for redemption. If this bond shall not be presented for payment on the date so fixed for redemption, it shall cease to bear interest from and after said date. The sinking fund provided for said bonds may also be used in the purchase thereof in accordance with the provisions of the resolution authorizing their issuance.

"It is hereby certified and recited that all acts, conditions and things required to happen, exist and be performed, precedent to and in the issuance of this bond, have happened, exist and have been performed in due time, form and manner as required by the Constitution and Laws of the

State of Florida, and the Charter of the City of Lakeland, Florida; that the total indebtedness of said City including this bond, does not exceed, and that the total indebtedness of said City at the creation of the indebtedness refunded hereby, including said indebtedness, did not then exceed any constitutional or statutory limitation thereon, and for the prompt and full payment of this bond, and the interest thereon, the full faith, and credit of said City are hereby pledged.

"The City of Lakeland, Florida, covenants with the holder of this bond that for the payment of the principal and interest thereof it will levy taxes in an amount sufficient to provide therefor upon all property within the present territorial limits of said City, excepting that property which is exempted from municipal taxation by the Constitution of Florida as it was in force and effect immediately prior to November 6, 1934. The City further covenants that all taxes levied for the payment of the principal and interest hereof, including taxes upon homesteads, will be collected in cash at the same time and in the same manner as operating and governmental *ad valorem* taxes levied by said City, and the rights and remedies for the enforcement of the indebtedness refunded hereby shall appertain to this bond and the taxes securing the same independently of any restrictions or limitations thereon enacted by the Legislature of the State of Florida since January 1, 1933.

"This bond may be registered as to principal alone and as to both principal and interest, in accordance with the provisions endorsed thereon.

"In Witness Whereof, said City of Lakeland, Florida, has caused this bond to be signed by its Mayor-Commissioner and City Manager; and attested by its City Clerk under its corporate seal, and the interest coupons hereto

attached to be executed with the facsimile signatures of said Mayor-Commissioner, City Manager, and City Clerk, all as of the first day of July, 1936.

"ATTEST:
"------------------------------------------------------
 "Mayor-Commissioner.

"------------------------------------------------------
 "City Clerk.
 "------------------------------------------------------
 "City Manager.

"(VALIDATION CERTIFICATE)

"Validated and confirmed by decree of the Circuit Court of the Tenth Judicial Circuit of the State of Florida in and for Polk County, rendered........................., 19..........

 "------------------------------------------------------
 "Clerk of said Circuit Court.

* * *

"Section 11. The City hereby covenants that notwithstanding Section 7, Article. X, of the Constitution of the State of Florida, added thereto by amendment ratified November 6, 1934, and any legislation enacted pursuant thereto, it will levy taxes upon all homesteads embraced within the territorial limits of the City for the payment of the principal and interest of the 1936 General Refunding Bonds and the Delinquent Tax Notes authorized hereby to the same extent as other property in the City may be liable to taxation therefor. * * *

"Section 15. The Delinquent Tax Notes herein authorized to be issued shall be signed by the Mayor-Commissioner, City Manager and attested by the City Clerk of Lakeland, and the corporate seal of the City of Lakeland shall be affixed thereto. The text of said Delinquent Tax Notes shall be in the following form:

"UNITED STATES OF AMERICA
"STATE OF FLORIDA
"CITY OF LAKELAND

"DELINQUENT TAX NOTE
"ISSUE OF JULY 1, 1936

"No....................... $.....................

"The City of Lakeland, Florida, in Polk County, Florida, is justly indebted and for value received, hereby promises to pay to bearer on demand at any time after July 1, 1946, the sum of.......................DOLLARS provided that the City reserves the right to pay this note on or before July 1, 1946, at forty per centum of the face amount hereof, and the bearer agrees to accept such payment of forty per centum as complete satisfaction and discharge of the indebtedness represented by this note if such payment is made on or before July 1, 1946. Payment hereof shall be made in lawful money of the United States of America at the office of the City Treasurer in the City of Lakeland, Florida, at one time or from time to time in part on the basis above prescribed and if partial payment is made hereon this note shall be presented at the place of payment for endorsement hereon of the part paid and the amount paid in discharge thereof.

"For the payment of this note and the issue of which it is a part, there is hereby pledged all unpaid taxes levied for debt service for the year 1933 and prior years and all special assessments remaining unpaid on July 1, 1936, together with the proceeds of any and all tax certificates and tax deeds issued for such taxes and special assessments and to further secure the payment hereof, the City covenants that for the fiscal year 1940 and for each fiscal year thereafter, it will levy a special tax of not less than two mills

upon all property within the territorial limits of said City excepting only that property which was exempted from municipal taxation by the Constitution of Florida as it was in force and effect immediately prior to November 6, 1934. The City further covenants that all taxes levied for the payment of this note, including taxes upon homesteads, will be collected in cash at the same time and in the same manner as operating and governmental *ad valorem* taxes levied by said City and the rights and remedies for the enforcement of the indebtedness refunded hereby shall appertain to this note and the taxes securing the same independently of any restrictions or limitations thereon enacted by the Legislature of the State of Florida since January 1, 1933.

"The City covenants that the proceeds of said delinquent taxes, unpaid special assessments and special tax levy will be paid into a special fund and applied solely to the purchase or redemption of this note and the issue of which it is a part, and further covenants that whenever such fund amounts to $50,000.00 or more and is not used for the purchase of notes of this issue and not reserved to so acquire such notes under then published notice in the manner more particularly prescribed by the resolution authorizing the issuance of this note, it will apply such fund to the redemption of notes of this issue to be selected by lot, on the basis above prescribed. In the event this note is called for redemption, notice thereof shall be published in a newspaper published and of general circulation in the City of Lakeland, Florida, once each week for four consecutive calendar weeks, the date of the first publication of such notice to be at least thirty days prior to the date fixed for redemption. If this note is called for redemption and is not presented within sixty days after the date fixed for such redemption, the City will apply the moneys held for the

redemption of this note to the purchase or redemption of other notes of this issue, in which event this note shall be dealt with thereafter the same as if it had not been previously called for redemption. The special fund provided for the redemption of notes of this issue may also be used in the purchase thereof in accordance with the provisions of the resolution authorizing their issuance.

"This note will be received by the City of Lakeland in payment of an amount of debt service taxes levied for the year 1933 and prior years and special assessments remaining unpaid July 1, 1936, equal to the unpaid face amount of this note, provided that it will be accepted in payment of such delinquent taxes only upon the condition that then current taxes are paid in cash simultaneously therewith or prior thereto.

"This note is issued for the purpose of refunding interest upon valid outstanding bonds of the City of Lakeland for the payment of which the City was obligated to levy taxes upon all property within its present territorial limits which was subject to taxation under the Constitution and Laws of Florida as they existed prior to November 6, 1934. This note is issued under the authority of and in full compliance with the Constitution and statutes of the State of Florida, including the Charter of the City of Lakeland and pursuant to a resolution passed by the City Commission of said City of Lakeland.

"It is hereby certified, recited and declared that all acts, conditions and things required to happen, exist and be performed precedent to and in the issuance of this note have happened, exist and have been performed in due time, form and manner as required by the Constitution and laws of the State of Florida; that the total indebtedness of said City, including this note, does not exceed, and that the total

indebtedness of said City at the creation of the indebtedness refunded hereby, including said indebtedness, did not then exceed any constitutional or statutory limitation thereon.

"IN WITNESS, WHEREOF, said City of Lakeland, Florida, has caused this note to be signed by its Mayor-Commissioner and City Manager and attested by its City Clerk under the corporate seal of said City as of the first day of July, 1936.

"_____ "_____
 "Mayor-Commissioner. "City Manager.
"_____
 "City Clerk.

"(VALIDATION CERTIFICATE)

"Validated and confirmed by decree of the Circuit Court of the Tenth Judicial Circuit of the State of Florida in and for Polk County rendered _____, 19_____.

 "_____
 "Clerk of Said Court."

The answer of the State of Florida by the State Attorney in effect avers that the allegations of the petition should be litigated; denies that the resolution marked Exhibit "A" was duly and legally adopted; denies that the city is indebted and obligated to levy taxes' therefor; avers that the proposed general refunding bonds and delinquent tax notes violate the homestead exemption provision of the Constitution and statutes of the State, viz.: Section 7, Article X, of the Constitution, and Chapter 17060, Acts of 1935; and Acts amendatory and supplementary thereto, and also violate Chapter 16838, Acts of 1935, Chapter 17401, Acts of 1935, and Section 10 of the petitioner's Charter as amended by Chapter 16526, Acts of 1933, and also violate Chapter

16965, Acts of 1935; "denies that this Court has the authority to validate the Delinquent Tax Notes because neither the amount nor the denominations thereof are fixed by the Resolution authorizing their issuance."

Testimony was taken before the court to sustain the allegations of fact contained in the petition challenged by the answer of the State, and the court found in favor of the petitioner city. The legal questions raised by the answer of the State of Florida by its State Attorney were not sustained by the trial court, and the State of Florida did not appeal.

The Atlantic Coast Line Railroad Company, a taxpayer of the City of Lakeland, alone intervened in the cause, and by answer set up matters not sustained by the court. On appeal from the final decree validating the refunding bonds and the "delinquent tax notes," the sole intervener, as taxpayer appellant, presents in substance the following contentions, viz.: that the territorial area of the city having been reduced after the issue of bonds by the city, the refunding bonds and "delinquent tax notes" cannot be legally issued without an approving vote of the prescribed electorate in view of amended Section 6, Article IX, of the Constitution; that the refunding bonds offer to the bondholders an enhanced contract with greater and more certain security for the payment of the bonded indebtedness, and the refunding bonds should be approved by an approving vote of the proper electorate in view of amended Section 6, Article IX, Florida Constitution, and of Article I, Section 10, of the Federal Constitution, forbidding impairment of the obligation of contracts; that Chapter 15772, Acts of 1931, the general refunding Act, does not repeal the special Charter Act requiring refunding bonds to be approved by the electorate; that the city cannot "issue refunding bonds

to pay * * * special assessment bonds, pledging the full faith and credit of the city and relieving the holders of the original bonds from exhausting their remedy for collection by compelling the payment of the special assessment liens by which the original bonds were secured, particularly over the objection of the taxpayer intervener appellant who has paid in full his entire special assessments, without violating Article IX, Section 6, of the Constitution of Florida, as amended, and Article I, Section 10, of the Constitution of the United States, and Section 12 of the Bill of Rights of Florida."

It is also contended that it is "germane and material to a proceeding for the validation of refunding bonds by a municipality, for a protesting taxpayer to show that the City, as an incident of its refunding program, without submitting the question of refunding its outstanding indebtedness to a vote of the people, has entered into a contract with its City Attorney, an officer of the City, for the payment of an unconscionable fee for services to be performed while acting as City Attorney in connection with the refunding program."

In the brief of counsel for the city it is in substance stated that the City of Lakeland, Florida, was established January 1, 1885, as the result of an election by the citizens held November 28, 1884, its territorial limits covering approximately four square miles. Chapter 4869, Acts of 1899, reduced the area to 2 5/16 square miles. On February 1, 1904, the city issued certain bonds, all except six of which have been paid. These six bonds are to be refunded. In 1907, the old city was abolished and a new city was established without changing the territorial limits. Chapter 5817, Acts of 1911, abolished the old city and established a new city with the same boundaries as in 1907.

During the year 1910, the city issued bonds. Forty thousand dollars of them have not been paid and are to be refunded. Chapter 6711, Acts of 1913, increased the territorial limits to 4½ square miles. During this period the city issued three series of bonds, $114,000.00 of them are unpaid and are to be refunded. Chapter 10754, Acts of 1925, increased the territorial area of the city to approximately 28 square miles. Between 1913 and July 15, 1925, when Chapter 10754 became effective, the city issued thirty series of bonds. Of these thirty issues of bonds, $2,752,500.00 bonds remain unpaid and are to be refunded. Chapter 14172, Special Acts of 1929, reduced the area of the city limits from approximately 28 square miles to approximately 23 square miles.

"The territory * * * excluded was outlying property which should probably never have been in the limits. During the period of time when the area of the City was approximately twenty-eight square miles in area it issued twenty-six original issues of bonds and seven refunding issues of bonds. The unpaid original bonds of such series amount now to Two Million Two Hundred Eighty-two Thousand Five Hundred ($2,282,500.00) Dollars, and the unpaid refunding bonds of such series amount now to Seven Hundred Fifty-nine Thousand ($759,000.00) Dollars. It is now sought to refund all of these outstanding bonds.

"In connection with the refunding bonds which amount to Seven Hundred Fifty-nine Thousand ($759,000.00) Dollars, it is safe to say that all of these represented and took the place of bonds which were issued prior to July 15, 1925, when Chapter 10754, Acts of Florida, for 1925, became effective.

"Since the time the Legislative enactment passed in 1929 became effective, the City has not issued any original bonds,

but has issued sixteen issues of refunding bonds. The unpaid bonds of such sixteen issues of refunding bonds amount to Six Hundred Three Thousand ($603,000.00) Dollars. While the record in this case fails to give the description of the bonds which were redeemed or set aside by reason of the issuance of the refunding bonds, none the less it is safe to say that the Six Hundred Three Thousand ($603,000.00) Dollars of refunding bonds took the place of a like amount of bonds issued prior to July 15, 1925, or at a time while the City was Four and one-half square miles or less in area.

"From the above and foregoing, it is apparent that the City's area was on some few occasions cut down after it had issued bonds, while at other times its area was increased."

It appears that many bonds were issued by the city after the Act of 1925 increased the territorial area of the city from Four and a half square miles to twenty-eight square miles, and before the Act of 1929 reduced the area by approximately five square miles.

The intervener taxpayer contends that by confining the tax levies to pay all the *refunding* bonds to property within the present city territorial limits, a taxpayer, party to the validating proceeding, is injured and may complain of it in the validating proceedings.

In City of Fort Myers v. State, *ex rel.* A. C. L. R. R. Co., filed June 3, 1937, it was said "a taxpayer *adversely affected* can raise the question" above referred to. (Emphasis supplied.)

Even though the five square miles excluded from the city limits by the Act of 1929 was then, and may be now, wild and unimproved lands, the validity of the inclusion of such lands in the city limits by the Act of 1925, is not in question

here, and it is not shown that the value of such five square miles so excluded from the city area in 1929 is so trifling and the land excluded so unfit for municipal purposes that a taxpayer on property in the city after the exclusion from the *present* city limits of five square miles, is not and cannot be adversely affected by confining taxation of property, in the present city limits, to pay through refunding bonds to be issued without an approving vote of the freeholder electors, city bonds that were issued while the five square miles were in the city limits and were subject to taxation. The refunding bonds have not been approved by the electorate. *Refunding* bonds in such cases should contain some recognition of the fact that a portion of the municipal area has been excluded since the bonds to be refunded were issued by the city; particularly when the taxing covenant is confined to the property in the *present* limits of the city; and a taxpayer in the present city limits has an interest in having the record so show.

The second section of Chapter 14172, Special Acts of 1929, is as follows:

"The lands excluded from the corporate limits of the said City of Lakeland under the provisions of this Act shall not be subject to assessment for taxes by said City after the year 1929; but otherwise no right of said municipality under any law or contract existing at the time of this enactment, whether of property, chose in action or easement, shall be impaired by this Act."

After the words, "within the present city limits," as used in the resolutions and bond covenants, something like the following, or of similar import, might be inserted in the resolutions and bonds: "the territorial limits of the city having been reduced by Chapter 14172, Special Acts of 1929, since the bond hereby *refunded* was issued in 19....." This

would be a reference to the territory which was authorized to be taxed to pay the *refunded* bond when it was issued, though the present city officials may have no authority to covenant to tax the excluded territory to pay the *refunding* bond. This being done, it may not then be claimed that the taxpayer is adversely affected by the taxing covenant of the *refunding* bonds to be issued without a vote of the electors. Any right the taxpayer might have by judicial proceedings to require the excluded territory to bear its share of taxes to pay the *refunding* bonds designed to refund bonds issued when the excluded territory was within the city, would not then be adversely affected by the covenants of the refunding bonds.

Chapter 15772, Acts of 1931, the general refunding Act, is, by its provisions, sufficient authority for the issue of refunding bonds by a municipality without reference to local Acts theretofore authorizing the municipality to issue refunding bonds.

The bond validating statute, Sections 5106, *et seq.*, C. G. L., does not contemplate that collateral matters shall be adjudicated in validating bonds.

It appears from the transcript of the record that at least many of the outstanding street improvement bonds of the City of Lakeland now sought to be refunded, contain the following:

"For the prompt payment hereof, both principal and interest, as same become due and payable, the full faith, credit and resources of said City of Lakeland are hereby irrevocably pledged.

"This bond is one of a series of 395 bonds of like date, tenor and amount, except as to maturities, and is issued for the purpose of paying less than seventy per centum of the cost of certain street improvements assessed against prop-

erty adjoining or contiguous to or bounding and abutting upon such improvements in the City of Lakeland, Florida, under the authority of and in full compliance with Chapter 9298, of the Laws of the State of Florida, Acts of 1923, pursuant to resolutions duly passed by the City Commission of the said City.

"It is hereby certified and rceited, that all acts, conditions and things required to be done, precedent to and in the issuance of this bond by the Laws and the Constitution of said State and the Ordinances of said City have been done and have happened in due time, form and manner; that special assessments against the property specially benefited by said improvements equal in value to this bond have been set aside as a trust fund for the payment of the principal and interest of this bond, and that in addition thereto, provision has been made for the levy and collection of a direct annual tax upon all the taxable property within said City sufficient to pay the principal and interest of this bond as the same shall become due and payable, should said special assessments for any reason prove insufficient for the payment of such principal and interest."

All the general refunding bonds now proposed to be issued are to be paid wholly by *ad valorem* taxes; and the unpaid special assessments are to be used to retire the "delinquent tax notes" sought to be validated.

This is a material alteration of the general taxpayers' obligation on the street improvement bonds issued by the city that cannot fairly be said to be not injurious to taxpayers, even though the taxpayers are obligated to pay the "delinquent tax notes," issued for past due interest on bonds that are to be refunded. An approving vote of the prescribed electorate is required in such a case by the pro-

visions of amended Section 6, Article IX, of the Constitution relative to the issue of bonds by municipalities.

Refunding bonds proposed to be issued *without* an approving vote of the electors, should continue only the substantial provisions relating to the obligation of taxpayers who are to pay the bonds, that are contained in the bonds to be refunded. See Sec. 6, Art. IX, as amended in 1930. See State v. City of Miami, 100 Fla. 1388, 131 So. 143; State v. Citrus County, 116 Fla. 676, 157 So. 4.

The decree is reversed for appropriate proceedings not inconsistent with this opinion.

It is so ordered.

ELLIS, C. J., and TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.