THOMAS, Justice.
The State of Florida by the State Attorney of the Eleventh Judicial Circuit has appealed from a decree entered by the judge of that circuit validating and confirming $24,100,000 Port Authority Revenue Bonds denominated “Series A” of Dade County, and also an agreement between the Authority and a certain firm of investment bankers with whom, according to the petition for validation, “the Authority agreed to negotiate * * * in good faith for the sale of the bonds, * *
Under the provisions of Chapter 22963, Laws Qf Florida, Acts of 1945, the Board of County Commissioners of Dade County adopted the title of “Dade County Port Authority” and proceeded to exercise the powers conferred by that law by .acquiring the “Pan American 36th Street Airport” and issuing bonds in the sum of $2,500,000 to pay for the property. Later the Authority purchased adjoining property, enlarged and improved the airport and for those purposes and for the retirement of the bonds outstanding issued $3,000,000 in bonds known as “International Airport Revenue Bonds”, the project then having become known as “International Airport.” Some of these bonds have been retired; others soon will be paid.
Further to improve International Airport and make it more easily accessible to the centers of the cities of Miami and Miami Beach, the Authority decided to acquire Venetian Causeway bridging Biscayne Bay and connecting the two cities and to construct a tollway between the airport and the causeway. To pay for the causeway the Authority issued $4,000,000 in bonds. These bonds are outstanding but the holder has agreed to surrender them “at the time of delivery of the Port Authority Revenue Bonds (Series A)” upon payment of principal and accrued interest without premium. To improve and develop the airport, the Authority has issued from time to time special fund certificates and of these there are now unpaid approximately $3,500,000. The owner of these certificates also has agreed to surrender them upon payment of principal and accrued interest without premium.
The Authority has combined the airport, causeway, tollway and allied projects necessary to the enlargement of the airport and improvement of its facilities, for the purpose of financing the whole and, with the exception of “buildings or structures hereafter constructed at the International Airport and financed by obligations not issued under the provisions” of the trust agreement we will mention, all are to be known as “Port Authority Properties.”
To effectuate the entire plan, including purchase of additional property, the Authority passed a resolution authorizing the bonds we described at the outset, the proceeds to be used also for retirement of the airport bonds, the causeway bonds and the certificates. Included in the resolution was a provision for a trust agreement between the Port Authority on the one part and a bank of Miami and one of New York City on the other part to insure the payment of *839 principal and interest of this issue of bonds and, incidentally, of bonds to be issued in the future with which we are not now concerned.
A detailed description of the securities, their terms, and maturities seems unnecessary to our determination of the questions posed, hut it is important to record that charges are to be made for the use of the facilities of Port Authority Properties and this income is to be applied to maintenance, repair and operation, the principal and interest of the bonded debt, and the maintenance of reserves for these purposes. The Port Authority is committed to create an interest and sinking fund from net revenue of sufficient size above costs of maintenance, repair and operation to pay the principal and interest as they become due.
This special fund is pledged to such pay-* ment and the bonds are “not * * * a debt of the County of Dade”; there is no obligation on the part of the County “to pay the bonds or the interest thereon” except from such fund; and "the faith and credit of the County are not pledged to the pay- ■ ment of the principal of or the interest on the bonds.” We have furnished the italics in quoting from the petition.
In other words the Port Authority is is-, suing bonds of sufficient amount to retire outstanding indebtedness and to pay for the enlargement of International Airport and its approaches, and is obligating itself to collect enough moneys from the use of Port Authority Properties to provide, after defraying costs of maintenance, operation and repair, an interest and sinking fund to insure payment of bonds and interest as they become due.
The State Attorney asks whether the issue was duly authorized and whether the ■bonds would be binding obligations payable solely from the special fund we have described without any claim on the part of the holders to meet which the county could be coerced to levy taxes, no election having been held under Section 6 of Article IX of the Constitution, F.S.A.
We understand from the form of the proposed bonds which is embedded in the trust agreement that is in turn incorporated in the resolution of the Board of County Commissioners that the bonds shall not “constitute a debt of the County of Dade and the County is not obligated to pay [the bonds] or the interest thereon except from the special fund provided therefor from revenues, and the faith and credit of the County are not pledged to the payment of the principal of or the interest” on the bonds.
The quoted language and our opinions in State v. Dade County, 157 Fla. 859, 27 So.2d 283, which approved the Port Authority’s first issue of bonds in the amount of $2,500,-000, and in Bessemer Properties, Inc., v. Peters, Fla., 51 So.2d 786, approving the Authority’s third issue of bonds, warrant our now holding that the present issue was properly authorized without a, freeholders' election, inasmuch as it will represent an indebtedness payable wholly from net revenues.
The only remaining questions of the State Attorney relate to the arrangement between the Port Authority and the investment bankers which the former would like for us to approve, because, according to the brief, it is important for the Port Authority to know whether the sale to or through the bankers is permissible and “It should not be necessary to wait until great expense has been incurred and much valuable time has been lost and then have the entire program further delayed until another suit can be filed and determined.”
This is an invitation to approve an agreement formed by a letter from the investment bankers and a resolution of the Board accepting the proposal in the letter. The procedure was prompted by conferences between the Board and the firm “for the purpose of working out a.satisfactory plan of refinancing the outstanding obligations of Dade County Port Authority and the financing of certain additional, improvements and additional projects of Dade County Port Authority,” to quote from the resolution.
*840 We find nothing: in the agreement that brings it within the narrow scope of the' procedure authorized by Chapter 75, Florida Statutes 1953, and F.S.A. Much as- we might be inclined to accommodate; the appellees, we feel neither obligated nor authorized in this action which is a suit to validate bonds, to approve an incidental contract relative to preparing prospectuses,' marketing bonds, and so on. Our attitude with- regard to this ¡point- applies also to the question raised, by the intervenor -relative to the effect of the proposed trust agreement upon indebtedness later to be assumed.
We affirm.that part of the decree validating the bonds, payable solely from the special fund and containing the provision that,the source of revenue for their payment is thus confined.-
ROBERTS, C. ■ J.,1 and HOBSON-and DREW, JJ., concur.