103 So.2d 185 (1958)
STATE of Florida, Appellant,
v.
The CITY OF MIAMI, Florida, Appellee.
No. 29247.
Supreme Court of Florida.
June 6, 1958.
Richard E. Gerstein, Miami, and George Eadie Orr, Miami Beach, for appellant.
William L. Pallot and Vivion B. Rutherford, Miami, and Mitchell, Pershing, Shetterly & Mitchell, New York City, for appellee.
Scruby & Yonge, Orange Park and Ralph A. Marsicano, Tampa, as amicus curiae.
DREW, Justice.
In State v. City of Miami, 146 Fla. 266, 200 So. 535, this Court affirmed a decree of the Circuit Court of Dade County validating municipal bonds issued for the purpose of acquiring and enlarging a system for pumping and purification of water for consumption and distribution to the users thereof. In that opinion, this Court approved the trust indenture under which these bonds were issued. This trust indenture provided, inter alia, for the issuance of additional bonds from time to time and as necessary to pay the cost of acquiring and constructing necessary extensions and improvements of the system. According to the record before us, there have been numerous issues of additional bonds under this provision of the trust *186 agreement, all of which have been validated by the Circuit Court of Dade County.
Under the provisions of the aforesaid trust agreement the City of Miami, by Resolution No. 29193, passed and adopted by the City Commission on July 3, 1957, authorized the issuance of an additional $2,500,000 Water Revenue Bonds, Series of 1957, to be dated as of June 1, 1957, for the purpose of paying the cost of acquiring and constructing necessary extensions and improvements to the waterworks system of the City and extraordinary renewals and replacements. Following the adoption of such resolution, the City instituted these proceedings under Chapter 75, F.S. 1957, F.S.A., to validate said bonds. Service was duly had upon all parties, a rule nisi was issued, duly published and made returnable before the trial judge on the 7th of August, 1957. On the 29th of July an amendment was filed to the petition for validation in which it was alleged "That the property of the waterworks system of the City, the revenues of which are pledged to the payment of said $2,500,000 Water Revenue Bonds Series 1957 and all other bonds issued under the trust indenture as provided therein, is exempt from all taxation under the provisions of the Florida Statutes."
The state's attorney answered the petition and the amendment denying that the property of the waterworks system of the City of Miami was exempt from all taxation under the Florida Statutes; on the contrary it was averred that by virtue of Chapter 57788, General Laws of Florida, Acts of 1957, which purported to amend Sections 192.06 and 192.52, F.S. 1945, F.S.A., a portion of the property of the waterworks system (that portion of the distribution system outside the municipal limits) was subject to taxation. Moreover, the state's attorney alleged that, by virtue of certain provisions of the Home Rule Charter of Dade County, the City of Miami was deprived of the exclusive right to operate a waterworks system in the City under the terms and provisions of the trust indenture aforesaid, and, further that by virtue of such Home Rule Charter said City was unable to comply with the provisions of the trust indenture and particularly certain sections thereof which were described in the answer, but which need not be detailed here.
Obviously for the purpose of determining the Home Rule Charter question and the question of taxability of the system outside the City in the validation proceedings, a stipulation was entered into by the City and the state's attorney making those municipalities which lie adjacent to the territorial limits of the City of Miami and which receive their water supply from it, as well as the County of Dade and its Board of County Commissioners, parties defendant to said action. The amendment bringing in new parties was allowed by order of the circuit judge and thereafter answers were filed by or decrees pro confesso entered against each of said parties.
The decree appealed from not only decrees said bonds to be valid and binding obligations of the City, but in addition thereto finds and adjudges:
"(7) That the Trust Indenture is a valid and binding contract of the City of Miami duly entered into pursuant to law and all of the provisions of the Trust Indenture are valid and binding obligations and agreements of the City, and the provisions of the Home Rule Charter of Dade County, which was ratified by a majority of the qualified electors of the County voting thereon at the election held May 21, 1957, and became effective on July 20, 1957, applicable to the ownership or operation of a waterworks system in the City of Miami do not impair the power and right of the City of Miami to issue said $2,500,000 City of Miami Water Revenue Bonds Series 1957 under and subject to the provisions of the Trust Indenture or render the City of Miami unable to comply with any or all of the provisions of the Trust Indenture.

*187 "(8) That under the provisions of said Home Rule Charter the County is not authorized or permitted to acquire all or any part of said waterworks system of the City or take any action affecting the operation thereof except upon provision being made by the County for the payment of all bonds issued and outstanding under the Trust Indenture in accordance with their terms.
"(9) That all of the property of the waterworks system of the City of Miami is held and used by the City exclusively for municipal purposes and is exempt from all taxation under the laws of the State of Florida."
The briefs present for our consideration three propositions, as follows:
"I.
"Do the provisions of the Home Rule Charter of Dade County, applicable to the ownership or operation of a waterworks system in the City of Miami, impair the power and right of the City to issue $2,500,000 City of Miami Water Revenue Bonds, Series 1957, under and subject to the provisions of the Trust Indenture securing the Water Revenue Bonds of the City, or render the City of Miami unable to comply with any or all of the provisions of the Trust Indenture?
"II.
"Is Dade County authorized or permitted under the provisions of the Home Rule Charter to acquire all or any part of the waterworks system of the City or take any action affecting the operation thereof, except upon provisions being made by the County for the payment of all bonds issued and outstanding under the Trust Indenture in accordance with their terms?
"III.
"Is the property of the waterworks system of the City of Miami held and used to supply consumers outside of the City for a profit exempt from all taxation under the laws of the State of Florida?"
The first question presented was properly raised for consideration in this validation proceeding. It goes directly to the question of the power to issue the bonds and the proceedings taken in connection therewith. See Thompson v. Town of Frostproof, infra.
In its answer the County of Dade alleged:
"(3) That these respondents say that the petitioner is entitled to an appropriate final decree validating and confirming the bonds described in the petition for validation, subject, however, to the provisions of Article VIII, Section 11, of the Florida Constitution [F.S.A.], and the Home Rule Charter of Dade County. That the Board of County Commissioners, as the legislative and governing body of Dade County under the Florida Constitution and Home Rule Charter, has not yet exercised the powers vested in it in respect to any water supply system operated by a municipality, and until such power and authority is exercised, the municipalities within Dade County may issue bonds and extend or expand existing water supply systems in accordance with their charters, the laws of Florida and the State Constitution, subject only to the provisions of Article VIII, Section 11, and the Home Rule Charter. * * *"
The decree appealed from upholds the position asserted by the County in paragraph 7 heretofore quoted. Our examination of the record in this cause and of the applicable provisions of the Constitution and laws of this State in effect at the time of the issue and validation of said bonds impels us to the conclusion that in the disposition of this proposition the trial court was correct. While the Board of County Commissioners of Dade County under the *188 Constitution of Florida and the Home Rule Charter may, pursuant to the provisions and in accordance with the requirements of said laws, exercise certain powers over municipalities of Dade County and any water supply system operated by any municipality therein, such power has no effect until exercised in accordance with the Constitution and laws aforesaid. The power of the City of Miami to issue bonds and other obligations  and particularly to issue the bonds under the trust indenture involved in this case  is unencumbered and unimpaired. The proceedings are in all respects regular, and insofar as the decree appealed from disposes of this question it is affirmed.
We now direct our attention to the second and third questions which relate to that portion of the decree of validation holding that under the provision of the Home Rule Charter of the County of Dade said County is not authorized or permitted to acquire all or any part of said waterworks system of the City or take any action affecting the operation thereof except upon provision being made by the County for the payment of all bonds issued and outstanding under the trust indenture in accordance with their terms, and that portion of the decree providing that all property of the waterworks system of the City of Miami is held and used by the City exclusively for municipal purposes and is exempt from all taxation under the laws of the State of Florida.
Proceedings to validate bonds are purely statutory. The power of the courts with reference thereto must be found within the statute itself. Section 75.02 expressly provides that "Any * * * municipality * * * of this state * * * may, if deemed expedient, determine its authority to incur bonded debt or issue certificates of indebtedness and the legality of all proceedings in connection therewith, including, in proper cases, any assessment of taxes levied or to be levied, the lien of such taxes, and of proceedings or other remedies for their collection." The same section provides that a petition may be filed by such municipality "against the state and the taxpayers, property owners and citizens of such * * * municipality * * *, including non-residents owning property or subject to taxation therein."
It was never intended that proceedings instituted under the authority of this chapter to validate governmental securities would be used for the purpose of deciding collateral issues or those issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto.
The statute itself provides for a speedy disposition of such causes even to the point of limiting the time to appeal to twenty days (Section 75.08, F.S.A.), limiting the time for filing a petition for rehearing, and cutting down the time for taking other steps in the perfection and argument of said appeal. Moreover said chapter gives such appeals priority in the Supreme Court of this state over all civil cases except habeas corpus (Section 75.08, F.S.A.). The rules of this Court have long recognized the necessity of a prompt disposition of these cases (Supreme Court Rule 19, adopted December 17, 1941, effective April 1, 1942; Supreme Court Rule 43, effective March 15, 1955; Florida Appellate Rule 4.3, adopted June 18, 1957, effective July 1, 1957). A recognition of the propriety of injecting collateral questions into bond validation proceedings would seriously handicap the speedy and efficient disposition of bond validation proceedings in this state and, as a result, would defeat the purpose of the statute and the rules of this Court and seriously impair the general welfare.
In one of the first cases decided by this Court concerning validation proceedings and the scope of the inquiry permitted under and by virtue of Section 3296 et seq., Revised Statutes of Florida, now, in essentially the same form, Chapter 75, F.S.A., we held:
"Statutory proceedings for validating municipal and other bonds are new in the law, and while our courts have not *189 been often called on to construe them they have a well-defined purpose and meaning. * * *
"`Validate,' `validation,' and `validating' are all derivatives of `valid,' which is defined in the Century Dictionary as meaning to test the validity of, to make valid, confirm, good or sufficient in point of law, efficacious, executed with the proper formalities, incapable of being rightfully overthrown or set aside, sustainable and effective in law as distinguished from that which exists or took place in fact or appearance but has not the requisites to enable it to be recognized and enforced by law. * * *
"* * * The petition brings in question the right and authority of the municipality or other taxing unit to issue the bonds, together with all proceedings taken in connection with their issue. * * *
* * * * * *
"* * * we think there can be no escape from the conclusion that the purpose of a decree validating and confirming bonds thereunder is to put in repose any question of law or fact that may be subsequently raised affecting the validity of such bonds." Thompson v. Town of Frostproof, 1925, 89 Fla. 92, 103 So. 118.
This Court has consistently held that these statutes do not contemplate that collateral matters shall be adjudicated in validating bonds. Atlantic Coast Line Railroad Co. v. City of Lakeland, 130 Fla. 72, 177 So. 206; State v. County of Sarasota, 118 Fla. 629, 159 So. 797; State v. City of Coral Gables, 114 Fla. 326, 154 So. 234; State v. City of Miami, 116 Fla. 517, 157 So. 13; State v. Dade County, Fla. 1954, 70 So.2d 837; State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300; Haines City v. Certain Lands, 130 Fla. 379, 178 So. 143.
In State v. City of Miami, 116 Fla. 517, 157 So. 13, 16, the resolution authorized the issue of bonds and provided that no taxes should be imposed by the City upon said bonds. In the validation proceedings it was claimed that such provision was in conflict with Article IX of the Florida Constitution and it was sought to have that question disposed of by this Court in the validation proceedings. In the opinion prepared for the Court by Mr. Justice Brown, we said:
"But we are not here concerned with this question, as it is one which can only be raised in a direct proceeding relating to the taxation of the bonds * * * So whether this provision exempting the bonds from taxation is valid or invalid, it cannot be questioned in this proceeding, and the determination of that question would not affect the validity of the bonds."
In State v. County of Sarasota, supra [118 Fla. 629, 159 So. 804], the question of whether the bonds could be lawfully exchanged for other bonds was raised in the validation proceedings. We held:
"The question suggested is a collateral one, the decision of which should be left to be arrived at in some appropriate proceedings * * *"
In State v. City of Coral Gables, supra [114 Fla. 326, 154 So. 243], the question was attempted to be presented in a bond validation proceeding whether certain property was legally embraced within the City and subject to paying the taxation of the bonds and this Court in that case said:
"Whether any territory is illegally embraced within the city limits cannot be determined in this proceeding."
In Atlantic Coast Line Railroad Co. v. City of Lakeland, supra [130 Fla. 72, 177 So. 215], the direct assertion was made:
"The bond validating statute, * *, does not contemplate that collateral matters shall be adjudicated in validating bonds."
And, as late as 1954, in State v. Dade County, supra [70 So.2d 840], we again *190 were asked to rule upon a collateral question relating to marketing bonds and other matters. Disposing of this question we said:
"Much as we might be inclined to accommodate the appellees, we feel neither obligated nor authorized in this action which is a suit to validate bonds, to approve an incidental contract relative to preparing prospectuses, marketing bonds, and so on."
In addition to the fact that the question determined by the trial court relating to the power of Dade County to acquire all or any part of the waterworks system of the City or to take any action affecting the operation thereof and in holding the property to be exempt from taxation were collateral matters wholly beyond the issues in the validation proceedings, the attempt to bring/these various municipalities outside of the City of Miami before the Court, as well as Dade County, was without authority and void. No such power exists under the statute and none may be conferred by consent of the parties.
That portion of the decree appealed from reading as follows, viz.:
"(8) That under the provisions of said Home Rule Charter the County is not authorized or permitted to acquire all or any part of said waterworks system of the City or take any action affecting the operation thereof except upon provision being made by the County for the payment of all bonds issued and outstanding under the Trust Indenture in accordance with their terms.
"(9) That all of the property of the waterworks system of the City of Miami is held and used by the City exclusively for municipal purposes and is exempt from all taxation under the laws of the State of Florida."
is hereby reversed with directions to delete it, and the other portions of said decree upon which said adjudication aforesaid is based, from such decree. In all other respects, the decree appealed from is hereby
Affirmed.
TERRELL, C.J., and HOBSON, ROBERTS and O'CONNELL, JJ., concur.