666 So.2d 879 (1995)
Sean F. MURPHY, Appellant,
v.
CITY OF PORT ST. LUCIE, Florida, a municipal corporation of the State of Florida, Appellee.
No. 84917.
Supreme Court of Florida.
October 26, 1995.
As Amended on Denial of Rehearing February 15, 1996.
Sean F. Murphy, Port St. Lucie, pro se.
Roger G. Orr, City Attorney and Debra A. Rescigno, Assistant City Attorney, Port St. Lucie, and Robert O. Freeman of Squire, Sanders & Dempsey, Jacksonville, for appellee.
PER CURIAM.
We have for review a final judgment validating the City of Port St. Lucie's (City) 1994A Bonds and 1994A Assessments. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. We affirm the trial court's final judgment validating the bonds and assessments.

MATERIAL FACTS
Appellee sought validation of special assessment bonds in an amount not to exceed $17,600,000 to finance the expansion of water and sewer utility lines into areas of the City designated as Special Assessment District No. 1 (also referred to as Special Assessment Area No. 1), Phase I (SAD 1, Phase I). At this time, the City also enacted an ordinance *880 (Assessment Ordinance) providing an alternative source of authority to Chapter 170, Florida Statutes (1993), for the levy and collection of special assessments. Additionally, the City Council adopted a resolution to provide for the levy and collection of special assessments against the properties within SAD 1, Phase I, which would be specially benefited by the provision of central water and/or sewer service.
Subsequently, the City filed a complaint in the circuit court for validation of the Special Assessment Bonds, Series 1994A. After a hearing, the trial court found that all the requirements of law with respect to the issuance of the 1994A Bonds and the levy and collection of the 1994A Assessments had been satisfied. Consequently, it validated the 1994A Bonds and the 1994A Assessments. This appeal followed.[1]

LAW AND ANALYSIS
Our review of a bond validation proceeding is limited to "whether the issuing body had the authority to act under the constitution and laws of the state and to ensure that it exercised that authority in accordance with the spirit and intent of the law." McCoy Restaurants, Inc. v. City of Orlando, 392 So.2d 252, 253 (Fla. 1980). In State v. City of Miami, 103 So.2d 185 (Fla. 1958), we said:
It was never intended that proceedings instituted under the authority of this chapter [75] to validate governmental securities would be used for the purpose of deciding collateral issues or those issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto.
Id. at 188. In this appeal, Sean F. Murphy, a city resident and taxpayer, states five separate reasons why the judgment validating the bonds must be reversed.
First, appellant contests the validity of a utility acquisition agreement between the City and St. Lucie County because he claims that the City did not consider the reasonableness of the purchase price when it agreed to purchase the utility from the County. Thus, appellant claims that the acquisition agreement is illegal and that the City is without authority to pledge the utility system revenues to secure payment of the bonds.[2] We find that whether the City failed to consider the reasonable price of the utility during the acquisition from the county is a collateral issue and beyond the scope of these validation proceedings. Because the proceedings relative to the purchase of the water and sewer utility system are not relevant in the context of a bond validation proceeding, we deny appellant relief on this basis.
As his second point, appellant asserts that the ordinances upon which the bond and assessments are based are "suspended" since the city clerk did not make a final determination of insufficiency of a petition filed by a group of citizens seeking a referendum to invalidate the ordinances. Initially, we note that this issue is also a collateral issue. Further, after reviewing the record, we find sufficient evidence to support the trial court's conclusion that the citizens' committee failed to comply with the City's referendum proceedings, and, therefore, the city clerk was under no obligation to issue a certificate of insufficiency.[3]
*881 Next, appellant argues that the covenant to budget and appropriate in the Master Bond Ordinance violates article VII, section 12, of the Florida Constitution. The gist of appellant's argument is that this ordinance provision obligates all of the City's non-advalorem funds, and, in effect, promises to levy ad valorem taxes without a referendum. Appellant relies on County of Volusia v. State, 417 So.2d 968 (Fla. 1982), where the county attempted to pledge all legally available revenue sources (other than ad valorem taxes), including regulatory fees and user charges, as security for bonds used to construct a jail. We find Volusia County distinguishable from this case. First, the Master Bond Ordinance states:
[T]he City may covenant, for the benefit of the Owners of the Bonds of such Series, to budget and appropriate in any Bond Year or Fiscal Year, solely from Non Ad Valorem Revenues, such funds as may be necessary to supplement the Pledged Revenues to the extent necessary to pay the Debt Service Requirement on the Bonds of such Series.
Port St. Lucie, Fla., Ordinance No. 94-35 § 3.04(E) (1994) (emphasis added). As this section clearly states, the non-ad-valorem revenues are being considered only as a supplemental source of revenue in the event the pledged revenues are insufficient to pay for the debt service. In contrast, in Volusia County, the non-ad-valorem revenue was being used as the sole source of income. Second, unlike Volusia, there is no provision in this resolution for the City to continue services for the purpose of generating income to pay the bonds. Thus, because any potential impact on ad valorem taxation is incidental, section 3.01 does not violate article VII, section 12, of the Florida Constitution.
Fourth, appellant claims that because the assessments are inconsistent with the City's Comprehensive Plan (Comp Plan), the final judgment validating the bonds must be reversed. More specifically, appellant asserts that the project intends to extend water and sewer lines to areas in Phase I, which are designated as non-urban areas. Appellant believes that this extension violates the Comp Plan because the City has not amended its Urban Service Area to include these non-urban service areas. We disagree, finding competent substantial evidence in the record to support the trial court's resolution of this issue.
Lastly, appellant contends that the special assessments do not confer a special benefit to the assessed homeowner, but rather are part of a city-wide program intended to confer a community-wide benefit to the citizens of Port St. Lucie. Therefore, appellant argues that the City has ignored the express limitation on special assessments  the benefit conferred cannot be less than or incidental to the benefits conferred to the community as a whole. In support of this argument, appellant relies on cases distinguishable from the instant case. For instance, Hanna v. City of Palm Bay, 579 So.2d 320 (Fla. 5th DCA 1991), involved a program to resurface all of the streets in the city and an assessment of all the properties, whereas this case involves the extension of an existing water and sewer system into designated areas of the city not presently served by any system. Some 15,000 property owners presently are on-line with the system and will not be benefited by the extension.
Likewise, in City of Fort Myers v. State, 95 Fla. 704, 117 So. 97 (1928), the City attempted to assess only properties which abutted the streets for all services regardless of whether they had received storm sewer, catch basin, or manhole improvements. This Court found the assessment scheme invalid because the properties abutting the paved roads were bearing the cost of storm sewer service which was provided to other remote properties. In contrast, in this case, only the properties receiving the service will be assessed for the extension. Thus, Fort Myers is also inapplicable to our facts. Similarly, in St. Lucie County v. Higgs, 141 So.2d 744 (Fla. 1962), the county attempted to assess all properties in order to provide fire protection to the entire county. In this case, the City is only assessing the properties that will be connected to the water and sewer system.

*882 CONCLUSION
In sum, because we find that the City acted within its authority and complied with all the requirements of the law in issuing the instant bonds, we affirm the trial court's final judgment validating the bonds and the assessments.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] A group of City residents, including Murphy, were opposed to the expansion project and filed petitions with the city clerk to have the City's ordinances reconsidered.
[2] The City points out in its brief that the acquisition of the utility was the subject of a separate lawsuit that resulted in a judgment validating the transaction.
[3] Under the City's charter, for a citizen to initiate reconsideration of a city ordinance, five qualified voters must file an affidavit asserting that they will constitute the petitioners' committee. Once this affidavit is filed, the city clerk must promptly issue petition blanks to the petitioners' committee. Each petition must then be accompanied by the specific ordinances sought to be reconsidered. The referendum petitions must be signed by at least 15% of the total number of qualified voters registered in the city and filed 30 days after the city council has adopted the ordinance sought to be reconsidered. Within twenty days after the petition is filed, the city clerk must issue a certificate as to its sufficiency. If a petition is found to be insufficient, the petitioners' committee has a certain amount of time to make the necessary amendments. Port St. Lucie, Fla., Charter art. VII, §§ 7.01-7.06 (1991).