# Supreme Court of Florida

_____

No. SC2024-0652

_____

**STATE ATTORNEYS FOR THE SECOND, SEVENTH AND NINTH JUDICIAL CIRCUITS,**
Appellants,

vs.

**FLORIDA PACE FUNDING AGENCY, etc.,**
Appellee.

_____

No. SC2024-0656

_____

**ALACHUA COUNTY TAX COLLECTOR, et al.,**
Appellants,

vs.

**FLORIDA PACE FUNDING AGENCY, et al.,**
Appellees.

_____

No. SC2024-0664

_____

**PALM BEACH COUNTY, FLORIDA, et al.,**
Appellants,

vs.

**FLORIDA PACE FUNDING AGENCY, et al.,**
Appellees.

_____

No. SC2024-0681
_____

**ALACHUA COUNTY, FLORIDA, et al.,**
Appellants,

vs.

**FLORIDA PACE FUNDING AGENCY, et al.,**
Appellees.

December 18, 2025

SASSO, J.

In these consolidated cases, several governmental entities appeal orders denying motions filed under Florida Rule of Civil Procedure 1.540 which sought to vacate a final judgment validating certain bonds. Because we conclude that rule 1.540 does not apply in bond validation proceedings, we affirm the circuit court's orders denying the motions.

**I**

This case originated as a bond validation proceeding brought pursuant to chapter 75, Florida Statutes (2022). *See* §§ 75.01-.05, Fla. Stat. Florida PACE Funding Agency (FPFA) filed a complaint in

- 2 -

Florida's Second Judicial Circuit seeking a judgment validating the issuance of $5 billion dollars in bonds that would fund PACE[1] qualifying improvements. FPFA complied with the statutory notice requirements by providing notice to the State Attorneys for the Second, Seventh, and Ninth Judicial Circuits. The circuit court then issued an order to show cause why the bonds should not be validated. At a subsequent hearing, State Attorneys for the Second, Seventh, and Ninth Judicial Circuits were represented through their assistant state attorneys. The court then entered its final judgment (Final Judgment) validating the revenue bonds.

No lawyer representing the State, or any other party, objected to the entry of the Final Judgment. Further, an assistant state attorney testified that he had read the proposed final judgment, it appeared "fairly straightforward," and he did not object to its entry at that time. On November 10, 2022, the Clerk of the Court entered

---

1. The Property Assessed Clean Energy Act (PACE Act) was established by the Legislature in section 163.08, Florida Statutes. "The PACE Act provides for issuance of bonds to finance the retrofitting of existing improved properties with qualifying improvements for energy conservation, renewable energy, clean energy, and hurricane protection." *Fla. Bankers Ass'n v. Fla. Dev. Fin. Corp.*, 176 So. 3d 1258, 1261 (Fla. 2015).

the Certificate of No Appeal. No state party or other actor moved to intervene before the certificate was issued. FPFA thereafter began issuing bonds in reliance of the judgment.

Two days before the deadline to do so, a group of governmental entities[2] filed two motions for relief from the judgment under Florida Rule of Civil Procedure 1.540.[3] The motions argued that (i) part of the judgment was void for deciding collateral matters; (ii) the circuit court lacked personal jurisdiction over the parties and deprived them of due process; (iii) FPFA misled the court to abuse the validation proceedings and receive an unauthorized judgment; and (iv) FPFA's actions caused surprise.

After the motions were filed, the circuit court provided a brief

---

2. The governmental entities consist of four types of parties: (i) state attorneys from several judicial circuits in this state; (ii) counties; (iii) tax collectors from various counties; and (iv) the Florida Tax Collectors' Association. Except for the state attorneys for the Second, Seventh, and Ninth Judicial Circuits, none of the movants appeared at the original bond validation proceedings that led to the current dispute.

3. Rule 1.540 permits post-judgment challenges to otherwise final judgments under certain circumstances such as clerical mistakes, fraud, newly discovered evidence, or when a judgment has become void.

period for discovery and then held an evidentiary hearing. Once the hearing was set, FortiFi, the servicer of the bonds to be issued, moved to intervene. The court granted FortiFi's motion and thereafter held a full evidentiary hearing. Ultimately, the circuit court entered two orders denying all movants' motions for relief from the validation judgment, using one order for the state attorneys and another for all other movants. These orders sided with FPFA and FortiFi on all accounts.

The first order—addressing those movants who did not appear in the circuit court—found that (i) rule 1.540 did not apply to a validated judgment because chapter 75 has a strict finality clause with narrow appeal procedures; (ii) the motion was untimely; (iii) the motion was substantively insufficient; and (iv) the movants were not deprived of due process by the bond proceedings. The second order, addressing the State Attorneys for the Second, Seventh, and Ninth Judicial Circuits, held that the State was procedurally barred from filing a rule 1.540 motion because no party appealed, and the rule cannot be used as a substitute for appellate review.

This appeal is the consolidation of appeals by state attorneys,

tax collectors, and counties who filed rule 1.540 motions below. The state attorneys were the only entity to participate in the bond validation proceedings before the rule 1.540 motions were filed.

## II

We begin by addressing two jurisdictional arguments—one raised by Justice Francis' dissent and another raised by Appellees. First, the dissent argues that we lack jurisdiction because the Florida Constitution vests us only with jurisdiction to consider appeals from final judgments entered in bond validation proceedings and orders granting relief under rule 1.540 are not typically treated as appeals from final judgments. *See* Fla. R. App. P. 9.130(a)(5). *But see Clearwater Fed. Sav. & Loan Ass'n v. Sampson*, 336 So. 2d 78, 79 (Fla. 1976) ("Post decretal orders are not true interlocutory orders . . . . Where an order after judgment is dispositive of any question, it becomes a final post-decretal order. To the extent that it completes the judicial labor . . . it becomes final as to that portion and should be treated as a final judgment . . . ."). We respectfully disagree with the dissenting opinion because we answered this question in *Mize v. Seminole County*, 229 So. 2d 841 (Fla. 1969).

In *Mize*, this Court considered several orders and a petition for writ of certiorari together in a consolidated appeal, one of which orders denied relief under rule 1.540. *Id.* at 842-43. We addressed our jurisdiction as to each order and the petition separately. *See id.* at 843 (itemizing each appeal and its individualized basis for jurisdiction). As to the order denying relief under rule 1.540, we said there was "no question concerning the jurisdiction of this Court" to deny the order that "ar[o]se out of the validation proceedings." *Id.* The only authority this Court cited for its jurisdictional analysis corresponding to the rule 1.540 appeal was article V, section 4(2) of the Florida Constitution—specifically referencing the portion of article V that provided "[a]ppeals from trial courts may be taken directly to the supreme court, as a matter of right . . . from final judgments . . . in proceedings for the validation of bonds and certificates of indebtedness." Art. V, § 4(2), Fla. Const. (1968).[4]

---

4. Our constitutional jurisdiction under that version of the Florida Constitution was broader than it is now. Article V also stated that we had jurisdiction to review by certiorari interlocutory orders passing upon chancery matters which upon a final decree would be appealable to this Court. But there is nothing to indicate

The dissent argues that *Mize* is inapposite. For three reasons, it in fact applies. First, contrary to what the dissent assumes, orders denying motions for relief from judgment were generally not reviewed as interlocutory orders under the prior version of the Florida Constitution. Take for example, *Clearwater Federal Savings & Loan*, in which we explained that post-decretal orders are "not true interlocutory orders" and should be "treated as a final judgment." 336 So. 2d at 79. In addition, as the dissent notes, rule 1.540 supplants bills in the nature of bills of review. We reviewed orders on bills in the nature of a bill of review by exercising our appellate jurisdiction, consistent with our characterization of post-decretal orders as final orders. *See, e.g.*, *Andrew v. Hecker*, 182 So. 251, 253-57 (Fla. 1938) (considering an "appeal" from a lower court determination on a bill in the nature of a bill of review); *Cadieux v.*

_____

we relied on this portion of the Florida Constitution to exercise jurisdiction in *Mize*. The opinion contains no citation to that language, only to the bond validation proceedings language. *Mize v. Seminole Cnty.*, 229 So. 2d 841, 843 (Fla. 1969). More telling though, nothing in the *Mize* opinion indicates we were conducting certiorari review of the order denying rule 1.540 relief. In contrast, we highlighted that we reviewed a different order via petition for certiorari, but we justified review of that order on our all writs jurisdiction so to not frustrate our exclusive jurisdiction over bond validation proceedings. *Id.*

*Cadieux*, 75 So. 2d 700, 701-02 (Fla. 1954) (same).[5]  For these reasons, the dissent reads into *Mize* assumptions that are neither supported by the opinion nor this Court's precedents as a whole.

Second, we do not see the relevance the dissent does in the fact that *Mize* presented a consolidated appeal.  We have never had the power to take matters over which we have no jurisdiction by consolidating them with those properly before us.  It makes sense then that in *Mize* we only exercised review after independently evaluating jurisdiction in each of the consolidated proceedings.

Finally, we disagree with the dissent because it conflates post-judgment orders with collateral matters.  Nothing about this Court's decision in *Mize*, nor our decision to apply *Mize* here, undermines the proper path for collateral proceedings in bond validation cases.  To be sure, collateral matters in bond proceedings are different categorically from post-decretal orders entered in the bond

---

5. By contrast, we applied the interlocutory review provision on which the dissent relies to true interlocutory orders entered before the final decree, in cases with which we otherwise had jurisdiction over the subject matter.  *See, e.g., Odham v. Foremost Dairies, Inc.*, 128 So. 2d 586, 588-89 (Fla. 1961); *Wilson v. Hillsborough Cnty. Aviation Auth.*, 138 So. 2d 65, 67 (Fla. 1962); *Richmond v. Fla. State Bd. of Architecture*, 163 So. 2d 262, 262 (Fla. 1964).

validation action. Collateral matters refer to the subject matter of the dispute, not the procedural posture of the pleading.

*Mize* thus serves as precedential authority as to whether we have jurisdiction to consider a denial of the rule 1.540 motion in this setting. Furthermore, neither party has argued that *Mize* was clearly erroneous on this point, nor do we independently find so today. *See State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020) (explaining the threshold for overturning precedent).

Next, we address Appellees' jurisdictional argument. Appellees argue that because section 75.08 requires appeals to be taken within thirty days from entry of the final judgment, this appeal is untimely because the rule 1.540 motions were not filed until over a year after the Final Judgment. So even though Appellants appealed within thirty days from the entry of the orders denying relief under rule 1.540, Appellees argue that the proper benchmark is the final judgment, not the orders denying relief under rule 1.540.

Section 75.08 is broad though. It states that "[a]ny party to the action whether plaintiff, defendant, intervenor or *otherwise*, dissatisfied with the final judgment, may appeal to the Supreme

- 10 -

Court." § 75.08, Fla. Stat. (emphasis added).[6] That section does not specify which orders are subject to review nor does it limit those who can appeal in the way Appellees suggest. Because the orders on appeal were entered in the bond validation action, albeit post-judgment, we conclude this statutory language authorizes this Court's review.

## III

Turning to the merits, the primary issue presented by this appeal is whether the circuit court properly determined that it lacked the authority to consider the parties' motions for relief filed under rule 1.540. Appellants argue that the circuit court erred because nothing in chapter 75 precludes the application of rule 1.540. Appellees, on the other hand, point to chapter 75's finality language and argue that the Final Judgment became forever conclusive as to all matters decided by it when the time to appeal that Final Judgment expired.

---

6. This is another reason we disagree with the dissent. The dissent suggests we are constrained to reviewing the final judgment in bond validation proceedings, but this interpretation of section 75.08 ignores that phrase in context, which provides that those "dissatisfied with the final judgment" may appeal.

## A

To address Appellants' argument, we first provide background on the statutory bond validation scheme. Florida created statutory proceedings to validate county and municipal bonds in 1911. Ch. 6237, Laws of Fla. (1911); *Thompson v. Town of Frostproof*, 103 So. 118, 118 (Fla. 1925). These "special" proceedings are "sui generis," *City of W. Palm Beach v. State*, 111 So. 640, 640 (Fla. 1927), and "not known to the common law," *City of Miami v. Romfh*, 63 So. 440, 442 (Fla. 1913). As a result, "[p]roceedings to validate bonds are purely statutory. The power of the courts with reference thereto must be found within the statute itself." *State v. City of Miami*, 103 So. 2d 185, 188 (Fla. 1958).

Chapter 75 therefore prescribes the scope of judicial power as it relates to bond validation proceedings. Specifically, it provides that circuit courts "have jurisdiction to determine the validation of bonds and certificates of indebtedness and all matters connected therewith." § 75.01, Fla. Stat. Once those matters are adjudicated, section 75.09 provides that if the circuit court

> validates such bonds . . . and no appeal is taken within
> the time prescribed . . . such judgment is forever
> conclusive as to all matters adjudicated against [the bond

- 12 -

issuer] . . . and the validity of said bonds . . . or of the proceedings authorizing the issuance thereof . . . shall never be called in question in any court by any person or party.

§ 75.09, Fla. Stat.  Next, section 75.17 provides for commencement of an action after validation, subject to certain requirements.[7]  *See* § 75.17, Fla. Stat.

Chapter 75 authorizes the judicial branch to perform a limited role as part of a broader scheme to ensure the marketability of the proposed bonds or certificates of indebtedness by foreclosing a subsequent attack on their validity.  *See City of Oldsmar v. State*, 790 So. 2d 1042, 1049 (Fla. 2001).  Under this framework, the question becomes whether rule 1.540 applies despite section 75.09's finality language.

**B**

Appellants argue in favor of the application of rule 1.540.  In their view, rule 1.540 does not contain any limiting language, so the circuit court erred in determining that no part of the validation

---

7.  Section 75.17 requires that every person commencing an action "shall file an affidavit of good faith stating that the action is not filed for delay and setting forth with particularity why the objection was not made as part of the validation action."

judgment can be questioned. Then, citing separation-of-powers principles, Appellants argue that the finality language in chapter 75 cannot foreclose the availability of rule 1.540 post-judgment relief, which is a procedural rule.

To address Appellants' initial argument, we first evaluate whether rule 1.540 applies as broadly as Appellants advocate. To this end, while Appellants are correct that rule 1.540 does not contain any specific limiting language, Appellants' argument overlooks that this rule must be read in harmony with the rest of the Florida Rules of Civil Procedure. And Florida Rule of Civil Procedure 1.010 provides the limiting language that Appellants suggest is missing.

Rule 1.010 provides: "These rules apply to . . . all special statutory proceedings in the circuit courts . . . . [However, t]he form, content, procedure, and time for pleading in all special statutory proceedings shall be as prescribed by the statutes governing the proceeding unless these rules specifically provide to the contrary."

Bond validation proceedings are special statutory proceedings. *Boatright v. City of Jacksonville*, 158 So. 42, 59 (Fla. 1934) (Ellis, J.,

- 14 -

dissenting); *see also State v. Citrus Cnty.*, 157 So. 4, 5 (Fla. 1934) ("The purpose of the statutory bond validation proceedings . . . is to set up a special course of legal procedure in the nature of a proceeding in rem as to proposed bonds [to test their validity] in advance of issuance."). As a result, the "form, content, procedure, and time for pleading" are as prescribed by chapter 75 unless the rules of civil procedure specifically provide to the contrary.

This does not end our analysis, because Appellants argue that even if the special statutory proceeding provision of rule 1.010 applies, any deference this Court shows to a statutory scheme is restricted by the phrase "for pleading." Therefore, in Appellants' view, deference to special statutory procedure is limited to "complaints, counterclaims, and answers" and does not apply to restrict motions like 1.540. Neither precedent nor analysis of the reasonable meaning of rule 1.010 supports Appellants' argument.

First, Appellants' propounded authority comes up short. Appellants offer *Pro-Art Dental Lab, Inc. v. V-Strategic Group, LLC*, 986 So. 2d 1244, 1254 (Fla. 2008), in which we examined the interplay of rule 1.500(c) in the context of a statutory summary proceeding. In doing so, we noted that "motions are *not*

'pleadings.'" *Id.* at 1257. But we said this when interpreting a statute that expressly incorporated the rules of civil procedure as a baseline and provided other statutory markers to interpret "pleading" in that instance. *Id.* Nowhere in *Pro-Art* did we restrict the application of rule 1.010's language to a specific range of documents.

Similarly, Appellants cite *Green v. Sun Harbor Homeowners' Ass'n*, 730 So. 2d 1261, 1262 (Fla. 1998), in which this Court examined precedent which required that a claim for attorney's fees "must be pled." This Court reversed a district court of appeal's decision which held that "pled" was not a technical definition and included motions. *Id.* at 1262-63. In doing so, this Court stated that the phrase must be construed in accordance with the Florida Rules of Civil Procedure and that "[c]omplaints, answers, and counterclaims are pleadings pursuant to Florida Rule of Civil Procedure 1.100(a)" and "[a] motion to dismiss is not a pleading." *Id.* at 1263. But again, nowhere in *Green* did we conclude that deference to statutory proceedings in rule 1.010 is limited only to matters regarding pleadings as that term is defined in rule 1.100(a).

Second, rule 1.010 reasonably read does not support Appellants' argument. Appellants argue for an acontextual understanding of the word "pleading." To be sure, our rules of procedure distinguish between matters which must be pled (e.g., punitive damages) and matters which may be moved for (e.g., dismissal, summary judgment). This aspect of procedure is implemented through rule 1.100(a), which differentiates what sorts of documents filed in court are pleadings as opposed to motions. *See* Fla. R. Civ. P. 1.100(a) (designating permissible pleadings and providing that "[n]o other pleadings will be allowed"). But the term "pleading" can carry differing meanings depending on the context. *See Pleading*, *Black's Law Dictionary* (12th ed. 2024) (noting alternative definitions of "pleading" including "[a] formal document" on one hand and "[t]he legal rules regulating the statement of the plaintiff's claims and the defendant's defenses" on the other).

So we examine the term "pleading" as it is used in rule 1.010, starting with its historical and legal context. Both special statutory proceedings and this Court's deference to the procedure delineated by the Legislature in those proceedings preexisted the adoption of the Florida Rules of Civil Procedure. *See, e.g., Romfh*, 63 So. at 442

("Where courts act under special statutory authority in particular proceedings not known to the common law, the statutory provisions must be substantially followed in all material proceedings, otherwise the action taken is not authorized and is ineffectual."); *In re Commitment of Cartwright*, 870 So. 2d 152, 162 (Fla. 2d DCA 2004) ("Rule 1.010 appears to be based on considerations similar to those expressed by the supreme court in *Caple* [*v. Tuttle's Design-Build, Inc.*, 753 So. 2d 49 (Fla. 2000)]. Procedural provisions in special statutory proceedings will ordinarily be 'intimately related to' or 'intertwined with' the substantive provisions enacted by the legislature." (citation omitted)).

It is not surprising then that when the first rendition of rule 1.010 appeared as Common Law Rule 61,[8] it appeared to codify

---

8. Common Law Rule 61, titled "Applicability in General," provided:

> These rules shall be applicable to all common law actions and all special statutory proceedings; except that the form, content, procedure and time for pleading in all special statutory proceedings shall be as prescribed by the statutes providing for such proceedings, unless these rules shall specifically provide to the contrary.

Fla. C. L. R. 61 (1950) (replaced by "Scope and Title of Rules" of the Florida Rules of Civil Procedure in 1954).

established judicial practice. Common Law Rule 61 was carried over into the Florida Rules of Civil Procedure, which are the product of a formalized consolidation of the Florida Common Law and Equity Rules. Winston E. Arnow & Clarence E. Brown, *Florida's 1954 Rules of Civil Procedure*, 7 Fla. L. Rev. 125, 128 (1954). That history serves as support for the conclusion that "pleading" in rule 1.010 carries with it a broader meaning than a specific type of filing.

In considering rule 1.010's interaction with special statutory regimes, this Court and the district courts of appeal have historically examined the overall procedural scheme selected by the Legislature to determine whether the rules of procedure "provide to the contrary." *See Cartwright*, 870 So. 2d at 162 (examining whether legislative evidentiary rules were inconsistent with court promulgated rules); *BNP Paribas v. Wynne*, 944 So. 2d 1004, 1006 (Fla. 4th DCA 2005) (holding that the trial court lacked authority based on rule 1.010 to extend the time to file a motion in a special statutory proceeding where the applicable statute provided a deadline); *Matrix Constr. Corp. v. Mecca Constr., Inc.*, 578 So. 2d 388, 389-90 (Fla. 3d DCA 1991) (granting certiorari relief because

the special statutory proceeding and rule 1.010 provided a statutory timeline that did not allow for general motions for extension); *Crocker v. Diland Corp.*, 593 So. 2d 1096, 1099 (Fla. 5th DCA 1992) ("[T]here is nothing in rule 1.140 or elsewhere in the rules of civil procedure that specifically supersedes this critical element of the statutory summary procedure [applicable to replevin actions]. Accordingly, the statute controls."); *Farrell v. Amica Mut. Ins. Co.*, 361 So. 2d 408, 411 (Fla. 1978) (holding in part that rule 1.010 restricted the application of rule 1.540 to a statutory and administrative scheme of procedure where the scheme did not invite general motion practice).

Placing the language of rule 1.010 in its legal and historical context, the textual distinction between the phrase "for pleading" in rule 1.010 and the technical definition of "pleadings" provided by rule 1.100 appears significant. Neither precedent nor rule 1.010's context indicate that rule 1.010 is as limited as Appellants suggest. We therefore conclude that in this special statutory proceeding, because rule 1.540 does not specifically provide to the contrary, we defer to chapter 75's statutory scheme.

# C

The final step in our analysis, then, is to examine whether chapter 75 forecloses the application of motions filed under rule 1.540 in bond validation proceedings. For several reasons we conclude that it does.

First consider the plain language of section 75.09. If the bonds are validated and no appeal is taken, the judgment is

> forever conclusive as to all matters adjudicated against plaintiff and all parties affected thereby . . . and the validity of said bonds . . . or of the proceedings authorizing the issuance thereof . . . shall never be called in question in any court by any person or party.

§ 75.09, Fla. Stat. Section 75.09 contains no exceptions. Nor is there any textual indication that its application is limited to matters that were properly presented in a bond validation proceeding unlike what one may argue is a collateral matter. Indeed, the statutory text leads to the inevitable conclusion that its finality language applies to "all matters adjudicated" by the final order, without reservation.

This conclusion is reinforced by examining section 75.09 as part of the overall statutory scheme contained in chapter 75. Viewed in context, the Legislature accounted for a narrow range of

post-judgment challenges to orders validating bonds.  *See* § 75.17 (permitting actions to challenge the validity of any bond if accompanied by an affidavit of good faith and a statement with particularity as to why the objection was not made earlier).  But this provision stands as a narrow exception to section 75.09's otherwise all-encompassing finality language.  And while Appellants argue that section 75.17 demonstrates legislative authorization of all post-judgment challenges, that argument is a reach.  Appellants' argument necessarily assumes that the provision of one remedy is the provision of all remedies.  But this logic runs afoul of the negative implication canon[9] and the limiting language of the other provisions.

While Appellants argue that section 75.05 permits state attorneys to bring a rule 1.540 challenge, their argument advances an interpretation that the text cannot bear.  Section 75.05 states in pertinent part:

> The state attorney shall examine the complaint, and, if it appears or there is reason to believe that it is defective,

---

9.  "The expression of one thing implies the exclusion of others."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012).

insufficient, or untrue, or if in the opinion of the state attorney the issuance of the bonds or certificates in question has not been duly authorized, defense shall be made . . . .

§ 75.05(1), Fla. Stat.  The section contemplates service of the validation complaint upon the state attorneys, their review of said complaint, and then a hearing in circuit court to make any defense against validation.  This section does not authorize a limitless ability to challenge the complaint whenever a state attorney sees fit.  What is more, the text provides that the state attorneys will examine "the complaint"—not the validity of the proceedings themselves.  *Id.*

Viewing the text of 75.09 in context, we are persuaded the trial court correctly determined chapter 75 precludes the application of rule 1.540 in bond validation proceedings.  And precedent does not undermine our conclusion.  Appellants argue *Mize* controls, suggesting this Court recognized the application of rule 1.540 in a chapter 75 proceeding.  But *Mize* offered no analysis or holding addressing this issue and cannot serve as precedent on that point.  *State v. Du Bose*, 128 So. 4, 6 (Fla. 1930) ("[N]o decision is authority

on any question not raised and considered, although it may be involved in the facts of the case.").

Likewise, *Weinberger v. Board of Public Instruction of St. Johns County,* 112 So. 253 (Fla. 1927), does not support Appellants' argument. In *Weinberger,* we concluded that a

> decree rendered in the statutory validation proceeding, purporting to validate such void bonds, is no defense to a subsequent suit in equity seeking to enjoin the issuance thereof on the ground that the bonds are about to be issued in violation of constitutional mandate, even though the complainant taxpayer might have intervened as an actual party and raised the objection in the statutory validation proceeding, but did not do so.

*Id.* at 259. Critical to our analysis was the "vital distinction" between a constitutionally based challenge and an imperfect or irregular exercise of lawful authority in the issuance of bonds. *Id.* at 257. Here, Appellants' challenge is neither constitutional in character nor lodged in a subsequent lawsuit. *Weinberger* is not applicable.

In sum, we conclude that chapter 75 means what is says. Bond validation judgments not challenged after the time for appeal expires cannot be collaterally attacked, unless the statute's limited exception applies. The judgment and proceeding authorizing the

issuance thereof is, as the statute says, "forever conclusive." The rules of procedure do not provide to the contrary.

## IV

Finally, we reject Appellants' separation-of-powers arguments. It is true that when a statute conflicts with a rule, the conflict is resolved by determining whether the subject of the conflict is procedural or substantive. *See, e.g., Hines v. State*, 931 So. 2d 148, 149-50 (Fla. 1st DCA 2006). But as we explained above, there is no conflict between the statute and procedural rules. So, we need not reach the issue of whether chapter 75's finality provision is a matter of substantive law. And even if the issue presented were purely procedural, there are no separation-of-power concerns. *See, e.g., Hayden v. Beese*, 596 So. 2d 1207, 1208-09 (Fla. 4th DCA 1992) (holding that rule 1.010 was constitutionally sound).

## V

In conclusion, we hold that section 75.09's finality language precludes application of rule 1.540 to final judgments validating bonds after the time for appeal has expired. Because we determine that the trial court correctly decided this dispositive issue, we find it

unnecessary to reach Appellants' remaining arguments.[10] We

affirm.

It is so ordered.

LABARGA, COURIEL, and GROSSHANS, JJ., concur.
MUÑIZ, C.J., concurs in result.
CANADY, J., dissents with an opinion.
FRANCIS, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION
AND, IF FILED, DETERMINED.

CANADY, J., dissenting.

Because the majority accords finality to determinations that

are collateral to the validity of the bonds, I dissent. The issue

underlying the controversy here relates not to bond validity but to

the relationship between the authority of FPFA and county

governmental authority regarding consumer protection and special

assessments. I would conclude that such matters are not

connected with the question of bond validity but are collateral

issues that are outside the scope of the statutory bond validation

proceedings. County regulatory authority can coexist with the

validity of the bonds. Determinations in validation proceedings

_____

10. We likewise need not reach the issue presented by Justice
Canady's dissent.

- 26 -

regarding such collateral matters are void. Being outside the proper scope of the validation proceedings, they are afforded no protection by the finality provisions of the statute.

As we long ago held in *State v. City of Miami,* 103 So. 2d 185, 188 (Fla. 1958), "[i]t was never intended that proceedings . . . to validate governmental securities would be used for the purpose of deciding collateral issues or those issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto." In that case, which involved proceedings to validate waterworks system municipal bonds, the challenged matters that were "determined by the trial court relat[ed] to the power of Dade County to acquire all or any part of the waterworks system of the City or to take any action affecting the operation thereof" and to the "exempt[ion] from taxation" of the project property. *Id.* at 190. We judged that these were "collateral matters wholly beyond the issues in the validation proceedings." *Id.* We further held that "the attempt to bring . . . various municipalities outside of the City of Miami before the [c]ourt, as well as Dade County, was without authority and void." *Id.* The circumstances presented by the case now before us—involving the adjudication

and limitation of local governmental powers—are analogous to the circumstances we considered in *City of Miami. Cf. Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So. 2d 940, 947 (Fla. 2001) (holding in proceeding for validation of sewer revenue bonds that validity of mandatory connection ordinance was properly adjudicated because "the economic feasibility of the central sewer system and the public purpose for [the] project [were] predicated on the hook-up of all property in the area of operation").

In sum, I agree with the observation of the Attorney General that "whether a county can regulate FPFA's operations is a broad and complex inquiry—implicating subjects (such as county home rule) that have no business being adjudicated in a limited bond validation proceeding." Amicus Brief of the Attorney General in Support of Appellants at 25. Such proceedings are not the proper forum for deciding the fate of measures to protect consumers adopted by counties across the state of Florida. The provisions of the bond validation judgment determining such matters are void and should be stricken from that judgment. I thus would reject all the grounds relied on by the circuit court in the order on review.

FRANCIS, J., dissenting.

My sole reason for not joining today's opinion is because I believe we simply don't have jurisdiction to decide this case.

*The* final judgment became final long ago—in late 2022. It was never appealed. Critically, the only matter we have before us now are orders denying rule 1.540 motions to set aside the final judgment. There is no actual appeal from *the* final judgment itself.

It is my opinion that the majority's focus on *Mize v. County of Seminole*, 229 So. 2d 841 (Fla. 1969), as a basis for our jurisdiction is misplaced.

There, although we determined there was no question we had jurisdiction to review an order denying a rule 1.540 motion arising out of a bond validation proceeding, we provided no rationale for this grant of jurisdiction. *Id.* at 843.

Indeed, we *only* cited our constitutional authority to review the final judgment from the bond validation proceeding, but offered no explanation for our apparently unquestionable jurisdiction to review the rule 1.540 order. *Id.* at 843 n.2 (citing art. V, § 4(2), Fla. Const. (1968)). Without additional reasoning for our decision in *Mize* to

- 29 -

review the rule 1.540 order, I believe the majority places too much weight on the "precedential" value of this unelaborated decision.

In other words, there is no reason to believe *Mize* requires us to review the post-judgment orders now on appeal where our constitutional authority to review a final bond validation judgment was not expressly cited as grounds to review the rule 1.540 order.

Nonetheless, our decision in *Mize* is readily distinguishable for two additional reasons.

First, *Mize* was a *consolidated* appeal where *both* the final bond validation judgment *and* the rule 1.540 order were before us at the same time. *See State v. Ivey*, 285 So. 3d 281, 284 (Fla. 2019) ("Once this Court has jurisdiction of a cause, it has jurisdiction to consider . . . other issues [that] have been properly briefed and argued and are dispositive of the case." (omission and alteration in original) (quoting *Savoie v. State*, 422 So. 2d 308, 312 (Fla. 1982))).

Second, and more importantly, *Mize* was decided under the 1968 version of our state constitution, and our decision to review the rule 1.540 order was conceivably related to our certiorari review. *See* art. V, § 4(2), Fla. Const. (1968) ("The supreme court may directly review by certiorari interlocutory orders or decrees

passing upon chancery matters which upon a final decree would be directly appealable to the supreme court.").

To shortly elaborate on this second point, our review authority no longer extends to "chancery matters,"[11] such as orders granting or denying rule 1.540 motions, because this Court's certiorari review was altogether eliminated by the electorate in 1980. *See* art. V, § 3(b)(1), Fla. Const. (1980); *see also* Fla. SJR 52-D (1971) (adopted by electorate and effective January 1, 1973, removing the Court's jurisdiction to review interlocutory orders passing upon chancery matters); Fla. SJR 20-C (1979) (adopted by electorate and effective April 1, 1980, eliminating this Court's certiorari review over any type of case).

Now, the district courts of appeal are the only appellate courts

---

11. *See* Henry P. Trawick, Jr., *Motion for Relief from Judgment*, Fla. Prac. & Proc. § 27:3 (2023-2024 ed.) ("The motion for relief from judgment . . . combines and supplants a number of differing common law and equitable remedies" including "writs of audita querela, coram nobis and coram vobis, bills of review and bills in the nature of a bill of review. . . . A bill of review was an equitable proceeding brought after entry of a decree by one of the original parties . . . and directed to error appearing on the face of the decree after discovery of new evidence not known at the time . . . or for fraud in obtaining the decree. A bill in the nature of a bill of review [was] brought by a stranger to the original suit.").

in Florida with constitutional power to review a circuit court's interlocutory orders by certiorari review. *See* art. V, § 4(b)(1), Fla. Const. ("District courts of appeal shall have jurisdiction to hear appeals . . . not directly appealable to the supreme court or a circuit court. They may review interlocutory orders in such cases to the extent provided by rules adopted by the supreme court.").[12]

_____

12. Although the constitutional language for bond validation proceedings mirrors the jurisdictional grant for death penalty cases, I note that our review of *postconviction* appeals in death cases is much different than our review of post-judgment orders denying rule 1.540 motions in a bond validation proceeding because, in death cases, this Court maintains original habeas review. *See* Philip J. Padovano, *Extraordinary Writs*, 2 Fla. Prac., Appellate Practice § 4:9 (2025 ed.) ("Jurisdiction to issue an extraordinary writ generally follows jurisdiction to review an order by appeal."). Because this Court clearly has jurisdiction to issue the writ of habeas corpus in death cases, *Baker v. State*, 878 So. 2d 1236, 1238-39 & n.3 (Fla. 2004), and because this Court has plenary appellate jurisdiction over death cases, it is consistent that this Court has jurisdiction to review orders denying all *postconviction* relief on appeal, *see Trepal v. State*, 754 So. 2d 702, 707 (Fla. 2000) ("[I]n addition to our appellate jurisdiction over sentences of death, we have exclusive jurisdiction to review all types of collateral proceedings in death penalty cases. This includes cases in which this Court has vacated a death sentence and remanded for further penalty proceedings." (citation omitted)). The same is no longer true, though, for certiorari review, which would, otherwise, be the appropriate vehicle for reviewing a nonfinal order in a bond validation proceeding. Unlike habeas, our constitution simply no longer authorizes us to issue writs of certiorari. *Id.* at 706 ("This

Indeed, the district courts of appeal were given express authority to review certain nonfinal and specified final orders—including rule 1.540 orders—"entered on an authorized and timely motion for relief from judgment."  Fla. R. App. P. 9.130(a)(5); *see also* Fla. R. App. P. 9.130, 2008 cmt. ("Subdivision 9.130(a)(5) is intended to authorize appeals from orders entered on motions for relief from judgment that are specifically contemplated by a specific rule of procedure (e.g., the current versions of Florida Rule of Civil Procedure 1.540 . . .).").

Since the district courts of appeal have authority to review certain interlocutory orders, this Court does not have exclusive subject matter jurisdiction over any and all bond validation matters.[13]

Court, however, does not have jurisdiction to entertain petitions for common law certiorari.").

13.  For example, the district courts review collateral issues arising *during* pending bond validation proceedings, *Gundel v. AV Homes, Inc.*, 264 So. 3d 304 (Fla. 2d DCA 2019) (reviewing by certiorari an interlocutory order denying a motion to dismiss under Florida's anti-SLAPP statute in a separate civil suit related to an ongoing bond validation proceeding); *after* a bond validation judgment has been rendered, *Fredrick v. N. Palm Beach Cnty. Improvement Dist.*, 971 So. 2d 974 (Fla. 4th DCA 2008) (affirming

By contrast, under the current version of our constitution, our court may *only* exercise its mandatory jurisdiction to hear "appeals from ***final judgments*** entered in proceedings for the validation of bonds" when "provided by general law." Art. V, § 3(b)(2), Fla. Const. (emphasis added).

Notably, the plain language of this constitutional provision is constrained to "appeals *from* final judgments," which obviously does not encompass an appeal that arises from a post-judgment order denying a rule 1.540 motion, but rather an appeal from the final judgment itself. *See Crawford v. Gilchrist*, 59 So. 963, 968 (Fla. 1912) ("Every word of a state Constitution should be given its intended meaning and effect . . . ."); *see also From, The American Heritage Dictionary of the English Language* (5th ed. 2011) ("Used to indicate a source, cause, agent, or instrument.").

order finding suit challenging assessments to repay bonds to be barred in part by statute of limitations where the bond validation judgment (not appealed) became final ten years earlier); and, sometimes, in particularly contentious cases, *both* during and after the bond validation judgement has been entered, *Warner Cable Commc'ns, Inc. v. City of Niceville*, 581 So. 2d 1352 (Fla. 1st DCA 1991) (holding that supreme court's decision to validate bonds had no binding effect on collateral issues, but was res judicata as to two of plaintiff's claims challenging the validity of the bond validation proceeding).

And as further support, the "general law" expressly limits our mandatory jurisdiction to review of *the* final judgment.

> Any party to the action whether plaintiff, defendant, intervenor or otherwise, dissatisfied with *the* final judgment, may appeal to the Supreme Court within the time and in the manner prescribed by the Florida Rules of Appellate Procedure.

§ 75.08, Fla. Stat. (emphasis added).[14]

Thus, under our limited (albeit mandatory) jurisdiction to hear appeals from final bond validation judgments, we have no basis to review the trial court's orders denying the rule 1.540 motions because the final judgment was not appealed and is not before us now.

In sum, although the majority largely focuses on our decision

---

14. The majority wrongly asserts that section 75.08 "does not specify which orders are subject to review" and argues that constraining our review to "the final judgment in bond validation proceedings . . . ignores that phrase in context, which provides that those 'dissatisfied with the final judgment' may appeal." Majority op. at 11 & note 6. The statutory context, however, indicates the term "dissatisfaction" likely signals that a party who received a favorable result under the final judgment cannot appeal, rather than extending this appellate right to appeals from post-judgment orders—well beyond the scope of the underlying constitutional provision which is expressly limited to "appeals *from* final judgments."

in *Mize*, I cannot agree that our prior caselaw bestows jurisdiction on us when the foundational texts we are limited by—our constitution and section 75.08—do not.

Because I can discern no basis for taking jurisdiction under our current constitutional authority, I would transfer this case to the First District Court of Appeal, which is the appropriate court to review a nonfinal or specified final order of the Second Judicial Circuit denying a rule 1.540 motion to set aside a judgment. *See* Fla. R. App. P. 9.040(b)(1) ("If a proceeding is commenced in an inappropriate court, that court will transfer the cause to an appropriate court."); *see also* Fla. R. App. P. 9.130(a)(1), (5).

I am not unsympathetic to the parties in this case who have spent a considerable amount of time and resources litigating this action in this Court. But I am convinced that transferring the case acknowledges the limitations on our constitutional authority. Therefore, I dissent.

An Appeal from the Circuit Court in and for Leon County
    Bond Validations
    Lee Marsh, Judge - Case No. 372022CA001562XXXXXX

Arthur I. Jacobs of Jacobs Scholz & Wyler, LLC, Fernandina Beach, Florida, and Douglas A. Wyler of Wyler Law Firm, Fernandina Beach, Florida,

for Appellant State Attorneys of the Second, Seventh, and Ninth Judicial Circuits

Kenneth B. Bell of Gunster, Yoakley, & Stewart, P.A., Tallahassee, Florida, and Jounice Nealy-Brown of Gunster, Yoakley, & Stewart, P.A., Tampa, Florida; and Chasity H. O'Steen, County Attorney, on behalf of Leon County, Florida, Tallahassee, Florida,

for Appellant Alachua County, Florida, et al.

Timothy R. Qualls of Young Qualls, P.A., Tallahassee, Florida; and Stephen G. Webster of Webster + Baptiste, PLLC, Tallahassee, Florida,

for Appellant County Tax Collectors

Robert H. Hosay, Benjamin J. Grossman, and Mallory Neumann of Foley & Lardner LLP, Tallahassee, Florida, and John A. Tucker of Foley & Lardner LLP, Jacksonville, Florida,

for Appellants Palm Beach County, Florida, Anne Gannon, in her official capacity as Palm Beach County Tax Collector, Polk County, Florida, Joe Tedder, in his official capacity as Polk County Tax Collector, and Noelle Branning, in her official capacity as Lee County Tax Collector

Alan Lawson, Paul C. Huck, Jr., and Jessica Slatten of Lawson Huck Gonzalez, PLLC, Tallahassee, Florida; and James C. Dinkins of CivForge Law, PA, Orlando, Florida,

for Appellee Florida PACE Funding Agency

Olga M. Vieira, David A. Nabors, Daniel L. Humphrey, and Luisa E. Paganini of Quinn Emanuel Urquhart & Sullivan, LLP, Miami, Florida,

for Appellee Fortifi Financial, Inc.

Melissa A. Tartaglia, Assistant Attorney, Hernando County, Brooksville, Florida; and Edward G. Labrador, Senior Legislative Counsel, Florida Association of Counties, Tallahassee, Florida,

    for Amicus Curiae Florida Association of Counties, Inc.

Erin L. Deady of Erin L. Deady, P.A., Delray Beach, Florida,

    for Amicus Curiae The Green Corridor District

Thomas M. Findley and Peter D. Webster of Carlton Fields, P.A., Tallahassee, Florida,

    for Amicus Curiae Florida Tax Collectors, Inc., dba the Florida Tax Collectors Association

Jeffrey P. DeSousa, Acting Solicitor General, and Kevin A. Golembiewski, Deputy Solicitor General, Office of the Attorney General, Tallahassee, Florida,

    for Amicus Curiae State of Florida